## Sizemore v. Commonwealth.

(Decided September 29, 1931.)

280

RAY C. LEWIS, and S. V. LITTLE, and E. H. JOHNSON and H. M. BROCK for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Alex Sizemore appeals from a judgment convicting him of manslaughter, and fixing his punishment at 21 years' imprisonment.

The facts are these: The deceased, Charles Huskey, lived at Black Mountain, in Harlan county. Both he and his wife, Martha, had been married before, and appellant's wife, Bertha, was Huskey's step-daughter. Appellant and his wife had been separated for a short time, and she was living at the Huskey home. Huskey's daughter by a former marriage, Mamie Helton, also lived there. About 11 o'clock on the night of the homicide appellant and his brother, James Sizemore, went to the Huskey home. James Sizemore arrived first, and the deceased opened the door. At the time of his arrival all the family were in bed. A few minutes later appellant appeared. After talking a short while he and his wife, Bertha, walked on the porch and sat down in the swing. In the meantime James Sizemore and Mamie Helton went to the home of Paris Pryor, and shortly thereafter they, together with Pryor, came back to the Huskey home. There was evidence to the effect that appellant and his wife while out on the porch had been quarreling, and he had been calling her bad names. Later

on appellant's wife came in from the back porch, followed by appellant. Appellant accused Mrs. Huskey of shielding his wife in her misconduct, and when his wife started into one of the rooms proceeded to follow her. Mrs. Huskey then left the house. Huskey suggested that it was late and the visitors should go on where they had started, or let the girls fix a bed for them. Paris Pryor, who was standing near a table, asked Huskey for a match. Huskey, who had lost his right arm, turned toward the mantle to get one for him. A shotgun was near the table. When Huskey turned to obtain a match appellant told him to drop that gun, and immediately commenced firing his pistol. James Sizemore and Mamie Helton ran out when the shooting started. Five shots were fired by appellant, some of them taking effect in the right shoulder near the armpit. After that Huskey made his way to Pryor's home carrying the gun. Pryor picked up the shotgun and fired the gun at a man whom he believed to be one of the Sizemores.

Appellant's account of the homicide is as follows: He had gone to the home of deceased at the request of his wife with the intention of taking her to West Virginia. He and she went out on the porch and discussed the matter. She finally agreed to go back with him. She went into the room to get her slippers. He then went into the room where deceased was. He saw deceased with a shotgun raised on him. The gun was lying across his arm, with his hand on the trigger. He asked deceased two or three times to drop the gun. He jerked his pistol out, shut his eyes, and opened fire. There had been no trouble between him and deceased, or between him and his mother-in-law. He did not have hold of his pistol or his hand on his pistol when he went into the house. He denied having called his wife a bad name, but claims that he shot deceased because deceased was going to shoot him, and he fired only five shots. Other witnesses for the defense testified that the deceased either had the gun in his hand, or was in the act of raising the gun, and that appellant did not fire until after he had told deceased to drop the gun.

The principal ground urged for reversal is the qualification of the self-defense instruction. If it be true, as testified by the witnesses for the commonwealth, that appellant entered the room and drew his pistol on the deceased, or Bertha Sizemore, at a time when the deceased was making no effort to shoot him, then the

case is one where appellant, when he was in no real or apparent danger of death, or great bodily harm at the hands of the deceased, began the difficulty and thus made the danger to himself excusable on the part of the deceased in his necessary or apparently necessary self-defense, or the defense of a member of his household. It follows that the qualification was proper. Howard v. Commonwealth, 202 Ky. 711, 261 S. W. 246.

While it is true that nearly all of the witnesses testified that appellant said to the deceased, ''Drop that gun'', it does not necessarily follow from the use of that expression that deceased was in the act of raising the gun on appellant. Indeed there is a sharp conflict in the evidence as to whether the gun was nearby deceased or in his hands. In the circumstances it cannot be said that the jury's finding that appellant did not act in self-defense was flagrantly against the evidence.

There is further complaint of the admission of certain remarks made by the witnesses to each other in the absence of appellant. The case turns on what occurred when appellant returned into the room and the homicide took place, and we do not regard the admission of the evidence as prejudicial error.

Though he asked an hour and a half for argument, the trial court allowed only an hour and a quarter. Under our Constitution the accused in all criminal prosecutions has a right to be heard by himself and counsel, Constitution, sec. 11, and this right, of course, necessarily includes a reasonable time for argument. What is a reasonable time depends upon the facts and circumstances of each particular case, and is a matter in the sound discretion of the trial judge. Therefore, unless it affirmatively appears that this discretion has been abused to the prejudice of the accused, it will not amount to reversible error. Combs v. Commonwealth, 97 Ky. 24, 29 S. W. 734, 16 Ky. Law Rep. 699; Thomas v. Commonwealth, 175 Ky. 38, 193 S. W. 653. Here the issues were comparatively simple, and the number of witnesses was not large. We are therefore constrained to the view that the trial court did not abuse a sound discretion in fixing the time for argument at an hour and a quarter instead of an hour and a half on the side.

Judgment affirmed.