## HERRING *v.* NEW YORK

No. 73–6587.   Argued February 26, 1975—Decided June 30, 1975

*Diana A. Steele* argued the cause for appellant.   With her on the briefs was *William E. Hellerstein.*

*Gabriel I. Levy,* Assistant Attorney General of New York, and *Norman C. Morse* argued the cause for appellee.   *Mr. Morse* was on the brief.

*Louis J. Lefkowitz,* Attorney General of New York, *pro se, Samuel A. Hirshowitz,* First Assistant Attorney General, and *Joel Lewittes* and *Mr. Levy,* Assistant Attorneys General, filed a brief for the Attorney General of New York.

MR. JUSTICE STEWART delivered the opinion of the Court.

A New York law confers upon every judge in a nonjury criminal trial the power to deny counsel any opportunity to make a summation of the evidence before the rendition of judgment.   N. Y. Crim. Proc. Law § 320.20

(3)(c) (1971).[1]  In the case before us we are called upon to assess the constitutional validity of that law.

## I

The appellant was brought to trial in the Supreme Court of Richmond County, N. Y., upon charges of attempted robbery in the first and third degrees and possession of a dangerous instrument.[2]  He waived a jury.

The trial began on a Thursday, and, after certain preliminaries, the balance of that day and most of Friday were spent on the case for the prosecution.  The complaining witness, Allen Braxton, testified that the appellant had approached him outside his home in a Staten Island housing project at about six o'clock on the evening of September 15, 1971, and asked for money.  He said that when he refused this demand, the appellant had swung a knife at him.  On cross-examination, the appellant's lawyer attempted to impeach the credibility of this evidence by demonstrating inconsistencies between Braxton's testimony and other sworn statements that Braxton had previously made.[3]  The only other

---

[1] Section 320.20 (3)(c)  provides:

"The court may in its discretion permit the parties to deliver summations.  If the court grants permission to one party, it must grant it to the other also.  If both parties deliver summations, the defendant's summation must be delivered first."

By contrast, New York law explicitly grants a right to make a "closing statement" in every civil case. N. Y. Civ. Prac. Rule 4016 (1963).

[2] N. Y. Penal Law §§ 110.00/160.15, 110.00/160.05, 265.05 (1975).

[3] On cross-examination of Braxton, the appellant's lawyer demonstrated the following inconsistencies: First, Braxton testified at trial that, after running into his house to evade the appellant, he did not look back outside to see where the appellant had gone; but before the grand jury, Braxton had said that, after entering his house, he had looked outside and the appellant was gone.  Second,

witness for the prosecution was the police officer who had arrested the appellant upon the complaint of Braxton. The officer testified that Braxton had reported the alleged incident to him, and that the appellant, when confronted by the officer later in the evening, had denied Braxton's story and said that he had been working for a Mr. Taylor at the time of the alleged offense. The officer testified that he had then arrested the appellant and found a small knife in his pocket.[4]

At the close of the case for the prosecution, the court granted a defense motion to dismiss the charge of possession of a dangerous instrument on the ground that the knife in evidence was too small to qualify as a dangerous instrument under state law. The trial was then adjourned for the two-day weekend.

Proceedings did not actually resume until the following Monday afternoon. The first witness for the defense

---

Braxton testified at trial that the knifeblade was shiny; but in his grand jury testimony he had said that he could not remember if it was shiny or not. Third, Braxton testified at trial that the appellant had asked him for money in a "soft" voice; but before the grand jury he had stated that the request for money was "kind of loud." Fourth, Braxton testified at trial that the appellant had swung a blade at him once; but in the felony complaint filed the day after the alleged crime, he had stated that the appellant had swung a knife at him "a couple of times."

[4] There was a major inconsistency between the police officer's testimony and that of Braxton. Braxton testified that he was walking down the street with the officer at about 6:45 p. m. when they came across the appellant. But the officer testified that he had searched for the appellant with Braxton until only about 6:30 p. m., when they had separated, and that about an hour later he had seen the appellant and Braxton on opposite sides of Broadway. Thus Braxton testified that he and the officer were together when they found the appellant about 6:45 p. m., while the officer's testimony was that he had separated from Braxton about 6:30 p. m., and that he next saw Braxton and the appellant on opposite sides of a street at about 7:30 p. m.

was Donald Taylor, who was the appellant's employer. He testified that he recalled seeing the appellant on the job premises at about 5:30 p. m. on the day of the alleged offense. The appellant then took the stand and denied Braxton's story. He said that he had been working on a refrigerator at his place of employment during the time of the alleged offense, and further testified that Braxton, a former neighbor, had threatened on several occasions to "fix" him for refusing to give Braxton money for wine and drugs.

At the conclusion of the case for the defense, counsel made a motion to dismiss the robbery charges. This motion was denied. The appellant's lawyer then requested to "be heard somewhat on the facts." The trial judge replied: "Under the new statute, summation is discretionary, and I choose not to hear summations." The judge thereupon found the appellant guilty of attempted robbery in the third degree, and subsequently sentenced him to serve an indeterminate term of imprisonment with a maximum of four years. The conviction was affirmed without opinion by an intermediate appellate court.[5] Leave to appeal to the New York Court of Appeals was denied. An appeal was then brought here, and we noted probable jurisdiction. 419 U. S. 893.

## II

The Sixth Amendment guarantees to the accused in all criminal prosecutions the rights to a "speedy and

---

[5] The court subsequently certified that in affirming the judgment, it had rejected the appellant's constitutional claims:

"Upon the appeal herein, there was presented and passed upon the following constitutional question, namely, whether relator's rights under the Fourth, Sixth and Fourteenth Amendments were denied by the trial court's application of paragraph (c) of subdivision 3 of CPL 320.20 to refuse appellant permission to deliver a summation. This court considered appellant's said conviction and determined that none of his constitutional rights were violated."

public trial," to an "impartial jury," to notice of the "nature and cause of the accusation," to be "confronted" with opposing witnesses, to "compulsory process" for defense witnesses, and to the "Assistance of Counsel." [6] These fundamental rights are extended to a defendant in a state criminal prosecution through the Fourteenth Amendment. [7]

The decisions of this Court have not given to these constitutional provisions a narrowly literalistic construction. More specifically, the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments. For example, in *Ferguson* v. *Georgia,* 365 U. S. 570, the Court held constitutionally invalid a state statute that, while permitting the defendant to make an unsworn statement to the court and jury, prevented defense counsel from eliciting the defendant's testimony through direct examination. Similarly, in *Brooks* v. *Tennessee,* 406 U. S. 605, the Court found unconstitutional a state law

---

[6] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . [,] to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

[7] See *Klopfer* v. *North Carolina,* 386 U. S. 213 (speedy trial); *In re Oliver,* 333 U. S. 257 (public trial); *Duncan* v. *Louisiana,* 391 U. S. 145 (jury trial); *Cole* v. *Arkansas,* 333 U. S. 196 (notice of nature and cause of accusation); *Pointer* v. *Texas,* 380 U. S. 400 (confrontation); *Washington* v. *Texas,* 388 U. S. 14 (compulsory process); *Gideon* v. *Wainwright,* 372 U. S. 335, and *Argersinger* v. *Hamlin,* 407 U. S. 25 (assistance of counsel).

that restricted the right of counsel to decide "whether, and when in the course of presenting his defense, the accused should take the stand." *Id.*, at 613. The right to the assistance of counsel has thus been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process.

There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge.[8] The issue has been considered less often

---

[8] See, *e. g., Jackson* v. *State,* 239 Ala. 38, 193 So. 417 (1940); *Yeldell* v. *State,* 100 Ala. 26, 14 So. 570 (1894); *People* v. *Green,* 99 Cal. 564, 34 P. 231 (1893); *State* v. *Hoyt,* 47 Conn. 518 (1880); *Hall* v. *State,* 119 Fla. 38, 160 So. 511 (1935); *Williams* v. *State,* 60 Ga. 367 (1878); *Porter* v. *State,* 6 Ga. App. 770, 65 S. E. 814 (1909); *State* v. *Gilbert,* 65 Idaho 210, 142 P. 2d 584 (1943); *People* v. *McMullen,* 300 Ill. 383, 133 N. E. 328 (1921); *Lynch* v. *State,* 9 Ind. 541 (1857); *State* v. *Verry,* 36 Kan. 416, 13 P. 838 (1887); *Sizemore* v. *Commonwealth,* 240 Ky. 279, 42 S. W. 2d 328 (1931); *State* v. *Cancienne,* 50 La. Ann. 1324, 24 So. 321 (1898); *Wingo* v. *State,* 62 Miss. 311 (1884); *State* v. *Page,* 21 Mo. 257 (1855); *State* v. *Tighe,* 27 Mont. 327, 71 P. 3 (1903); *State* v. *Shedoudy,* 45 N. M. 516, 118 P. 2d 280 (1941); *People* v. *Marcelin,* 23 App. Div. 2d 368, 260 N. Y. S. 2d 560 (1965); *State* v. *Hardy,* 189 N. C. 799, 128 S. E. 152 (1925); *Weaver* v. *State,* 24 Ohio St. 584 (1874); *State* v. *Rogoway,* 45 Ore. 601, 78 P. 987 (1904), rehearing, 45 Ore. 611, 81 P. 234 (1905); *Stewart* v. *Commonwealth,* 117 Pa. 378, 11 A. 370 (1887); *State* v. *Ballenger,* 202 S. C. 155, 24 S. E. 2d 175 (1943); *Word* v. *Commonwealth,* 30 Va. 743 (1831); *State* v. *Mayo,* 42 Wash. 540, 85 P. 251 (1906); *Seattle* v. *Erickson,* 55 Wash. 675, 104 P. 1128 (1909).

One treatise states the general rule as follows: "The presentation of his defense by argument to the jury, by himself or his counsel, is a constitutional right of the defendant which may not be denied

in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense.[9]

One of many cases so holding was *Yopps* v. *State,* 228 Md. 204, 178 A. 2d 879 (1962). The defendant in that case, indicted for burglary, was tried by the court without a jury. The defendant in his testimony admitted being in the vicinity of the offense, but denied any involvement in the crime. At the conclusion of the testimony, the trial judge announced a judgment of guilty. Defense counsel objected, stating that he wished to present argument on the facts. But the trial judge refused to hear any argument on the ground that only a question of cred-

---

him, however clear the evidence may seem to the trial court." 5 R. Anderson, Wharton's Criminal Law and Procedure § 2077 (1957).

[9] See *United States* v. *Walls,* 443 F. 2d 1220 (CA6 1971); *Thomas* v. *District of Columbia,* 67 App. D. C. 179, 90 F. 2d 424 (1937); *United States ex rel. Spears* v. *Johnson,* 327 F. Supp. 1021 (ED Pa. 1971), rev'd on other grounds, 463 F. 2d 1024 (CA3 1972); *United States ex rel. Wilcox* v. *Pennsylvania,* 273 F. Supp. 923 (ED Pa. 1967); *Floyd* v. *State,* 90 So. 2d 105 (Fla. 1956); *Olds* v. *Commonwealth,* 10 Ky. 465 (1821); *Yopps* v. *State,* 228 Md. 204, 178 A. 2d 879 (1962); *People* v. *Thomas,* 390 Mich. 93, 210 N. W. 2d 776 (1973); *Decker* v. *State,* 113 Ohio St. 512, 150 N. E. 74 (1925); *Commonwealth* v. *McNair,* 208 Pa. Super. 369, 222 A. 2d 599 (1966); *Commonwealth* v. *Gambrell,* 450 Pa. 290, 301 A. 2d 596 (1973); *Anselin* v. *State,* 72 Tex. Cr. R. 17, 160 S. W. 713 (1913); *Walker* v. *State,* 133 Tex. Cr. R. 300, 110 S. W. 2d 578 (1937); *Ferguson* v. *State,* 133 Tex. Cr. R. 250, 110 S. W. 2d 61 (1937). Cf. *Collingsworth* v. *Mayo,* 173 F. 2d 695, 697 (CA5 1949); *State* v. *Hollingsworth,* 160 La. 26, 106 So. 662 (1925). But see *People* v. *Manske,* 399 Ill. 176, 77 N. E. 2d 164 (1948). Cf. *People* v. *Berger,* 288 Ill. 47, 119 N. E. 975 (1918); *Casterlow* v. *State,* 256 Ind. 214, 267 N. E. 2d 552 (1971); *Reed* v. *State,* 232 Ind. 68, 111 N. E. 2d 661 (1953); *Lewis* v. *State,* 11 Ga. App. 14, 74 S. E. 442 (1912).

ibility was involved, and that therefore counsel's argument would not change his mind. The Maryland Court of Appeals held that the trial court's refusal to permit defense counsel to make a final summation violated the defendant's right to the assistance of counsel under the State and Federal Constitutions:

> "The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right." *Id.,* at 207, 178 A. 2d, at 881.

The widespread recognition of the right of the defense to make a closing summary of the evidence to the trier of the facts, whether judge or jury, finds solid support in history. In the 16th and 17th centuries, when notions of compulsory process, confrontation, and counsel were in their infancy, the essence of the English criminal trial was argument between the defendant and counsel for the Crown. Whatever other procedural protections may have been lacking, there was no absence of debate on the factual and legal issues raised in a criminal case.[10] As the rights to compulsory process, to confrontation, and to counsel developed,[11] the adversary system's commit-

---

[10] Stephen has described the trial procedure in this period as a "long argument between the prisoner and the counsel for the Crown." 1 J. Stephen, History of the Criminal Law of England 326 (1883). For a fuller description of the trial process in that period, see *id.,* at 325–326, 350.

[11] See 7 Will. 3, c. 3, § 1 (1695); 1 Anne, Stat. 2, c. 9, § 3 (1701); 6 & 7 Will. 4, c. 114, § 1 (1836).

ment to argument was neither discarded nor diluted. Rather, the reform in procedure had the effect of shifting the primary function of argument to summation of the evidence at the close of trial, in contrast to the "fragmented" factual argument that had been typical of the earlier common law.[12]

---

[12] Cf. Stephen, *supra*, n. 10, at 349.

In the Colonies, where a similar reform in criminal defendants' rights occurred, common practice, if not right, apparently gave to the accused the opportunity to sum up his case in closing argument. For example, Zephaniah Swift, in an early colonial treatise on the law in Connecticut, wrote:

"When the exhibition of evidence is closed, the attorney for the state opens the argument, the counsel for the prisoner follow[s], the attorney for the state then closes the argument, and the chief justice then sums up the evidence in his charge delivered to the jury, in which he states in the most candid and impartial manner, the evidence and the law, and the arguments of the counsel for the state, as well as the prisoner. . . ." 2 Z. Swift, A System of the Laws of the State of Connecticut 401 (1796).

With a lesser degree of certainty, a modern scholar concludes that in the trial of capital offenses in colonial Virginia, it was likely, but not certain, that the accused would be given an opportunity to make a closing argument in summation at the end of the trial. See H. Rankin, Criminal Trial Proceedings in the General Court of Colonial Virginia 101 (1965).

In England, in 1865, the right of the defendant in a criminal trial to make a closing argument, either by himself or by counsel if he was represented, was given express statutory recognition: "[U]pon every Trial . . . whether the Prisoners . . . or any of them, shall be defended by Counsel or not . . . such Prisoner . . . shall be entitled . . . when all the Evidence is concluded to sum up the Evidence respectively." Criminal Procedure Act of 1865, 28 Vict., c. 18, § 2. This remains the rule in England. 10 Halsbury's Laws of England § 777, pp. 422–423 (3d ed. 1955). See also T. Butler & M. Garsia, Archibold's Pleading, Evidence and Practice in Criminal Cases, § 558 (37th ed. 1969). Cf. *R.* v. *Wainwright,* 13 Cox Cr. Cas. 171 (1875); *R.* v. *Wickham,* 55 Cr. App. R. 199 (1971) (noted at 1971 Crim. L. Rev. 233).

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. See *In re Winship,* 397 U. S. 358.

The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion. See generally 5 R. Anderson, Wharton's Criminal Law and Procedure § 2077 (1957). Cf. American Bar Association Project on Standards for Criminal Justice, The Prosecution Function § 5.8, pp. 126–129, and the Defense Function § 7.8, pp. 277–282 (App. Draft 1971).

But there can be no justification for a statute that empowers a trial judge to deny absolutely the opportunity for any closing summation at all. The only conceivable interest served by such a statute is expediency. Yet the difference in any case between total denial of final argument and a concise but persuasive summation could spell the difference, for the defendant, between liberty and unjust imprisonment.[13]

Some cases may appear to the trial judge to be simple—open and shut—at the close of the evidence. And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be "likely to leave [a] judge just where it found him." [14]   But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.[15]

---

[13] We deal in this case only with final argument or summation at the conclusion of the evidence in a criminal trial. Nothing said in this opinion is to be understood as implying the existence of a constitutional right to oral argument at any other stage of the trial or appellate process.

[14] R. Jackson, The Struggle for Judicial Supremacy 301 (1941).

[15] The contention has been made that, while a right to make closing argument should be recognized in a jury trial, there is insufficient justification for such a right in the context of a bench trial. This view rests on the premise that a judge, with legal training and experience, will be likely to see the case clearly, rendering argument superfluous, or to recognize that further illumination of the issues would be helpful, in which case he would permit closing argument. We find this contention unpersuasive. Judicial training and expertise, however it may enhance judgment, does not render memory or reasoning infallible. Moreover, in one important respect, closing argument may be even more important in a bench trial than in a trial by jury. As MR. JUSTICE POWELL has observed, the "collective

The present case is illustrative. This three-day trial was interrupted by an interval of more than two days— a period during which the judge's memory may well have dimmed, however conscientious a note-taker he may have been. At the conclusion of the evidence on the trial's final day, the appellant's lawyer might usefully have pointed to the direct conflict in the trial testimony of the only two prosecution witnesses concerning how and when the appellant was found on the evening of the alleged offense.[16] He might also have stressed the many inconsistencies, elicited on cross-examination, between the trial testimony of the complaining witness and his earlier sworn statements.[17] He might reasonably have argued that the testimony of the appellant's employer was entitled to greater credibility than that of the complaining witness, who, according to the appellant, had threatened to "fix" him because of personal differences in the past. There is no way to know whether these or any other appropriate arguments in summation might have affected the ultimate judgment in this case. The credibility assessment was solely for the trier of fact. But before that determination was made, the appellant, through counsel, had a right to be heard in summation of the evidence from the point of view most favorable to him.[18]

---

judgment" of the jury "tends to compensate for individual shortcomings and furnishes some assurance of a reliable decision." Powell, Jury Trial of Crimes, 23 Wash. & Lee L. Rev. 1, 4 (1966). In contrast, the judge who tries a case presumably will reach his verdict with deliberation and contemplation, but must reach it without the stimulation of opposing viewpoints inherent in the collegial decision-making process of a jury.

[16] See n. 4, *supra*.

[17] See n. 3, *supra*.

[18] A defendant who has exercised the right to conduct his own defense has, of course, the same right to make a closing argument. See *Faretta* v. *California, ante,* p. 806.

In denying the appellant this right under the authority of its statute, New York denied him the assistance of counsel that the Constitution guarantees. Accordingly, the judgment before us is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACKMUN join, dissenting.

## I

The Court has made of this a very curious case. What began as a constitutional challenge to a statute which gives trial courts discretion as to whether "parties" may deliver summations, has been transformed into an exploration of the right to counsel—although no one doubts that appellant was competently represented throughout the proceedings which resulted in his conviction. Today's opinion, in deriving from the right to counsel further rights relating to the conduct of a trial, expands the earlier holdings in *Ferguson* v. *Georgia,* 365 U. S. 570 (1961), and *Brooks* v. *Tennessee,* 406 U. S. 605 (1972). In each of these three instances one must presume, in view of the Court's analytical approach, that regardless of the intrinsic importance of the rights involved, they are enforced only because the accused has a prior right to the assistance of a third party in the preparation and presentation of his defense.

I think that in each instance a statement from Mr. Justice Frankfurter's separate opinion in *Ferguson* is apropos: "This is not a right-to-counsel case." 365 U. S., at 599. In the present case, the crucial fact is not that *counsel* wishes to present a summation of the evidence, but that the *defendant*—whether through counsel or otherwise—wishes to make such a summation. Of course

I do not suggest that the rights enforced in these cases are without basis, at least in particular cases, in the Due Process Clause of the Fourteenth Amendment. Cf. *id.*, at 598–601 (opinion of Frankfurter, J.); *Brooks* v. *Tennessee, supra,* at 618 (REHNQUIST, J., dissenting). But I do suggest that the Court's analytical framework, and its resulting prophylactic rule, are wrongly employed to decide this case.

I would have thought that in *Faretta* v. *California, ante,* p. 806, the Court had recanted its approach in *Ferguson* and *Brooks.* In *Faretta* the Court concluded that it is the Sixth Amendment, and not the Right-to-Counsel Clause of that Amendment, which "constitutionalizes the right in an adversary criminal trial to make a defense as we know it." *Ante,* at 818. Yet in the present case we are informed that it is the Right-to-Counsel Clause which constitutionalizes the right to present a defense "in accord with the traditions of the adversary factfinding process." *Ante,* at 857. Not being content merely to contradict *Faretta* by holding that entitlement to the traditions of our judicial system depends upon the right to retain counsel, the Court also states that, "of course, the same right to make a closing argument" is available to those who choose not to exercise their right to counsel. *Ante,* at 864 n. 18. To complete the confusion, the Court does not explain the latter *ipse dixit,* but does cite one case—*Faretta.*

## II

The Due Process Clause of the Fourteenth Amendment has long been recognized as assuring "fundamental fairness" in state criminal proceedings. See, *e. g., Lisenba* v. *California,* 314 U. S. 219, 236 (1941); *Moore* v. *Dempsey,* 261 U. S. 86, 90–91 (1923). Throughout the history of the Clause we have generally considered the question of

fairness on a case-by-case basis, reflecting the fact that the elements of fairness vary with the circumstances of particular proceedings. As the Court observed in *Snyder* v. *Massachusetts,* 291 U. S. 97, 116–117 (1934):

"Due process of law requires that the proceedings shall be fair, but fairness is a relative, not an absolute concept. . . . What is fair in one set of circumstances may be an act of tyranny in others."

See, *e. g., Sheppard* v. *Maxwell,* 384 U. S. 333 (1966); *Spencer* v. *Texas,* 385 U. S. 554 (1967); *Chambers* v. *Mississippi,* 410 U. S. 284 (1973); *Cupp* v. *Naughten,* 414 U. S. 141 (1973).

However in some instances the Court has engaged in a process of "specific incorporation," whereby certain provisions of the Bill of Rights have been applied against the States. See the cases cited *ante,* at 857 n. 7. In making the decision whether or not a particular provision relating to the conduct of a trial should be incorporated, we have been guided by whether the right in question may be deemed essential to fundamental fairness—an analytical approach which is compelled if we are to remain true to the basic orientation of the Due Process Clause. See, *e. g., In re Oliver,* 333 U. S. 257, 270–271 (1948) (public trial); *Duncan* v. *Louisiana,* 391 U. S. 145, 155–158 (1968) (jury trial); *Pointer* v. *Texas,* 380 U. S. 400, 403–404 (1965) (confrontation); *Washington* v. *Texas,* 388 U. S. 14, 17–19 (1967) (compulsory process); *Gideon* v. *Wainwright,* 372 U. S. 335, 342 (1963) (appointed counsel). But once we have determined that a particular right should be incorporated against the States, we have abandoned case-by-case considerations of fairness. Incorporation, in effect, results in the establishment of a strict prophylactic rule, one which is to be generally observed in every case regardless of its particular circumstances. It is a judgment on the part of

this Court that the probability of unfairness in the absence of a particular right is so great that denigration of the right will not be countenanced under any circumstances. These judgments by this Court reflect similar judgments made by the Constitution's Framers with regard to the Federal Government.

Beyond certain of the specified rights in the Bill of Rights, however, I do not understand the basis for abandoning the case-by-case approach to fundamental fairness. There are a myriad of rules and practices governing the conduct of criminal proceedings which may or may not in particular circumstances be necessary to assure fundamental fairness. Obvious examples are the rules governing the introduction and testing of evidence, as well as, I think, the New York rule governing summations in nonjury trials. Such matters are not specifically dealt with in the text of the Constitution, nor are they subject to the judgment that uniform application of a particular rule is necessary because the likelihood of unfairness is too great when that rule is not observed. As to such matters it is appropriate, and frequently necessary, that trial judges be accorded considerable discretion, subject of course to both appellate review on an abuse-of-discretion standard and, ultimately, to the fundamental fairness inquiry under the Fourteenth Amendment.

The present case is a prime example of why a prophylactic rule with regard to summations in nonjury trials is thoroughly inappropriate. The case was tried before a judge who, unlike a jury, may take notes on testimony, and who is experienced in both judging the credibility of witnesses and testing the relevance of their testimony to the elements which must be proved to obtain a conviction. The case was conceptually and factually a simple one, involving no more than whether one was

to believe the victim, despite the inconsistencies in his testimony, or the defendant.[1]   The judge had previously permitted appellant's counsel to summarize the evidence, on the occasion of the motion to dismiss at the close of the State's case.   That appellant's counsel had considerable faith in the judge's familiarity with, and ability to organize, the evidence is shown by the transcript of that earlier summation:

> "[MR. ADAMS:]   Do you want to hear me extensively on that, Judge?   Or I have a witness here, I can go on, or would you rather hear me on some lengthy argument subsequently, Judge?
>
> "THE COURT:   I will hear anything you have to say.
>
> "MR. ADAMS:   All right.   Judge, I believe here that as a matter of law we have a doubt here. Firstly, on this first witness of the prosecution here, Judge.   There were numerous inconsistencies, and *I will not bore the Court reading that.   Of course the Court has copious notes on it, and I am sure it is very fresh in the Court's mind.*   But on top of that, Judge, we have a questionable complainant, with a questionable way of how it happened, no witness other than this complainant.
>
> "An officer who checked out this particular matter testified here and said that the man was working at that time.   A definite denial by the defendant. And I believe that as a matter of law, Judge, there is a reasonable doubt here."   App. 66 (emphasis added).

Similarly, when the opportunity to summarize was

---

[1] The employer's credibility was not at issue.   Not only was he vague as to the times at which he had seen appellant at his garage, but that garage was located only 3½ blocks from the scene of the crime.   App. 76, 86.

denied, appellant's counsel did not so much as suggest that he thought it necessary to refresh the judge's memory as to certain matters.[2] It should also be noted that in his earlier argument counsel had referred to most of the matters which the Court today suggests might have usefully been brought to the judge's attention in a final summation. See *ante,* at 864. Finally, the fact that the judge conducted this trial in a fairminded fashion, and would not arbitrarily prevent a summation which could be expected to clarify his understanding of the case, is evidenced by his dismissal of one count over the vigorous protests of the prosecution.

Whatever theoretical effect the denial of argument may have had on the judgment of conviction, its practical effect on the outcome must have been close to nothing. The trial judge was not conducting a moot court; he was sitting as the finder of fact in a trial in which he had been present during the testimony of every single witness. No experienced advocate would insist on presenting argument to such a judge after he had indicated his belief that argument would not be of assistance. Trial counsel here did not insist, and the claim which

---

[2] The colloquy at the end of the trial was as follows:

"MR. ADAMS: Judge, at this time I respectfully move to—make two motions, Judge. Firstly, that the Court dismiss the two counts, first count and the second count of the indictment on the grounds the People have failed to make out a prima facie case; and on the further grounds the People have failed to prove the defendant guilty of each and every part and parcel of the crimes charged in count one and count two beyond a reasonable doubt as a matter of law, and as a matter of fact.

"THE COURT: Motion denied. I will take a short recess to deliberate, and I will give you a verdict.

"MR. ADAMS: Well, can I be heard somewhat on the facts?

"THE COURT: Under the new statute, summation is discretionary, and I choose not to hear summations.

"THE CLERK: Remand." App. 92.

is today sustained by this Court is urged by other counsel.

The truth of the matter is that appellant received a fair trial, and I do not read the Court's opinion to claim otherwise. The opinion instead establishes a right to summation in criminal trials regardless of circumstances, by tagging that right onto one of the specifically incorporated rights. It thereby conveniently avoids the difficulties of being unable to characterize appellant's trial as fundamentally unfair, but only at the expense of ignoring the logical difficulty of adorning the specifically incorporated rights with characteristics which are not themselves necessary for fundamental fairness.[3]

The nature of the right which the Court today creates is as curious as its genesis. Apparently it requires nothing more than *pro forma* observance, since the trial judge "must be and is given great latitude" in controlling the duration and limiting the scope of closing summations. He may determine what is a "reasonable" time for argument, and at what point the argument becomes repetitive or redundant, or strays "unduly" from the mark. "In all these respects he must have broad discretion." *Ante,* at 862. That is, after 30 seconds, or some other minimal period of argument, the judge is free to exercise his discretion. It is not clear why this should be so. If it is

---

[3] While the Court, *ante,* at 862, presents a variety of arguments supporting the wisdom and desirability of generally permitting closing arguments in nonjury trials, none of them impress me as rising to the level of fundamental fairness. They would be of substantial merit if presented to the New York Legislature, but are hardly relevant to the constitutional inquiry which it is our duty to perform. As for the Court's final flourish ("no aspect of such advocacy could be more important"), it is obvious hyperbole which can only be uttered in complete disregard of such matters as cross-examination, the selection of trial strategy and witnesses, and attempts to exclude unconstitutionally obtained evidence.

true that "there is no certain way for a trial judge to identify accurately [those cases in which closing argument may be beneficial], until the judge has heard the closing summation of counsel," *ante,* at 863, it is equally true that he cannot determine whether continued argument will be repetitive, redundant, or otherwise useless until he has heard the continued argument. But in any event, the constitutional issue does rather quickly become framed once again according to the standards which should have governed all along—whether or not the judge's actions in the particular case deprived the defendant of a trial which was fundamentally fair.[4]

By propagating a right to summation—despite such a right's lack of textual basis, and despite the inability reasonably to conclude that the right is so basic that we cannot chance trial court discretion in the matter—the Court has furthered the practice of reviewing state criminal trials in a piecemeal fashion. The incident upon which this reversal is based was but one stage in a carefully conducted trial, and cannot be claimed to have permeated the entire proceeding as would trial without a jury, or without counsel. The Court is thus disregarding the basic question of whether the proceeding by which a defendant is deprived of his liberty is fundamentally fair.

The Court's decision derives no support either from logic or from the Amendment it professes to apply. Since it reverses a criminal conviction which was fairly obtained, I dissent.

---

[4] I would also think it not unlikely under the Court's holding that post-trial briefing would be an adequate substitute for oral summation, since it meets the concerns which the Court expresses as the basis for its newly found constitutional right. See *ante,* at 862.