

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-12-00431-CR
## NO. 02-12-00432-CR

RICKY LYNN APPELT                                                   APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Ricky Lynn Appelt appeals his convictions for six counts of indecency with a child. In a sole point, he argues that the trial court abused its discretion by inadvertently reducing his time for closing jury argument. We affirm.

---

[1]Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. FACTUAL BACKGROUND

S.A. had two young daughters, L.G. and L.R. S.A. married Appellant in June 2006. In June 2010, L.R. showed S.A. a string of text messages Appellant had sent to L.R., which were "very sexual in nature" and, he admitted, "inappropriate." L.G. and L.R. eventually told S.A. that Appellant had acted inappropriately and in a sexual manner toward them beginning in 2006, with many of these instances involving Appellant exposing his genitals in L.R.'s and L.G.'s presence. On October 27, 2010, at the urging of her pastor, S.A. went to the police with the texts. After interviews with L.G. and L.R. were conducted, an arrest warrant and a search warrant were issued for Appellant and his home. At Appellant's home, the police found adult pornography, including sexual pictures of S.A. and Appellant, on Appellant's computer. The police also found letters and journals written by Appellant in which he admitted to touching his "crotch" in L.R.'s presence. The police discovered a workbook Appellant completed as part of sexual-addiction counseling he participated in. In the workbook, Appellant wrote that he was "careless with [his] nudity" because he does not view nudity as harmful or sexual.

## B. PROCEDURAL BACKGROUND

### 1. Trial

Appellant was indicted for three counts of indecency by exposure with L.G. and three counts of indecency by exposure with L.R.[2] *See* Tex. Penal Code Ann. § 21.11(a)(2) (West 2011). After a trial that lasted less than two days and after the trial court read the charges to the jury, the trial court gave the State and Appellant thirty minutes each to conduct their closing jury arguments. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007), art. 36.16 (West 2006), art. 37.07, § 2(a) (West Supp. 2012). The State's first argument portion lasted twelve minutes.[3] Co-counsel for Appellant then argued for approximately eleven minutes. Lead counsel for Appellant began his argument and referred to the fact that he would be arguing "for 20 minutes." Approximately seven minutes into lead counsel's argument, the trial court informed him that he had two minutes left to argue. Lead counsel responded, "Two?" but immediately continued his argument. About three minutes later when the trial court informed lead counsel that his time had expired, lead counsel requested an extra "30 seconds," which was granted. Lead counsel briefly summed up why Appellant should be found

---

[2]Both L.G. and L.R. were younger than seventeen at the time of each offense.

[3]The argument times are based on an exhibit prepared by the court reporter showing the time stamp for each line of argument.

not guilty.  Lead counsel and co-counsel argued for a total of twenty-two minutes.  The State then argued to the jury in rebuttal for thirteen minutes.[4]

The jury immediately began its deliberations after the State concluded its rebuttal argument.  The jury deliberated for approximately six hours and found Appellant guilty of all six counts of indecency with a child.  The trial court discharged the jury,[5] and held a punishment hearing approximately two months later after a presentence-investigation report was prepared.  *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 9 (West Supp. 2012).  The trial court sentenced Appellant to ten years' confinement for the three counts against L.R. and ten years' confinement for the three counts against L.G., suspended imposition of the sentences, and placed him on community supervision for four years.  *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b), art. 42.12, § 3(a) (West Supp. 2012).

## 2.  Motion for New Trial

Appellant timely filed a notice of appeal and a motion for new trial.  In his motion, Appellant argued that the trial court had erroneously allowed only twenty minutes for defense counsel to make closing jury arguments, which resulted in harm because "trial counsel's closing argument was purposely organized in a

---

[4]Appellant argues that the State "was given its full allotment of time" but the State argued for approximately twenty-five minutes in total, which was less than the thirty-minute allotment granted by the trial court.

[5]Appellant had not elected to have the jury assess his punishment.  *See* Tex. Code Crim. Proc. Ann. art. 27.02(7) (West 2006), art. 37.07, § 2(b) (West Supp. 2012).

4

manner that would present many critical points in the last few minutes of the argument." The trial court held a hearing on the motion and conceded that it had inadvertently deprived Appellant of some of his promised time to conduct closing argument:

> As I recall, [co-counsel] . . . used eight minutes of his argument. I told [lead counsel] it was his turn, and the Court believed that [lead counsel] had 12 minutes left because I am used to doing 20 minutes, and I failed to take into consideration that I had given an extra ten minutes.
>
> I warned [lead counsel] of the fact that he had two minutes, and I specifically remember [lead counsel] turning and looking at me and questioning me if I had - - if it was correct, and I said, yes, it was. And he finished in the time that was - - in other words, I did not cut him off, as I recall. I allowed him to finish his argument.
>
> It was at the conclusion of his argument and after the State had concluded that I specifically noted that or realized that I had left the time out for the Defense, and I informed [lead counsel] of that. I don't know what the exact time was that was shorted, but I will state that I did not give the full time allotted per the agreement.

Lead counsel testified at the new-trial hearing and reiterated that he structured his closing argument to place his strongest points—the allegedly inconsistent and incredible statements from L.G. and L.R.—"in the latter part of the argument" and his argument regarding the admittedly inappropriate text message to L.G. in the beginning of his argument to reduce the chance the jury would "see the text message, turn off, and not pay any attention to the rest of the case." Lead counsel introduced his argument notes as an exhibit at the hearing and stated he estimated that his portion of the argument would have lasted twenty minutes if he had been able to follow his outline. Lead counsel specified

at the hearing the points he was unable to argue because of the time limit. Lead counsel also argued that the brief length of the trial belied its complexity:

> [T]he State put in some big exhibits which were writings that were seized from [Appellant's] home with a search warrant. And it was like journals. There was a - - some kind of sexual misconduct treatment, as a general term, workbook that [Appellant] had filled out. Inside that workbook was an expert report talking about his - - whether he was - - I can't remember what the exact terms were, but it was, basically, a sex offender evaluation on him. That was in evidence.
>
> The writings were pretty dense. . . . [H]is version of events came out through those writings. So while he didn't testify and it didn't take a lot of time in front of the jury necessarily to go through it, there was a lot of detail in there that had to be discussed.

Lead counsel admitted that he was not aware of the shortened time until after his argument was over. He explained that he did not ask for more than thirty seconds "given the judge's tone." The State elicited lead counsel's admission that he had failed to track how much time was used while he was arguing and that he did not object to the shortened argument time when the punishment phase of the trial began.

The trial court did not rule on the new-trial motion; thus, it was denied by operation of law. *See* Tex. R. App. P. 21.8(c). Appellant now argues that the trial court reversibly erred by failing to give him the correct amount of time to conduct closing jury argument, which deprived him of the right to trial counsel.

## II. STANDARD OF REVIEW

A defendant has an inferential, statutory right to present closing argument. Tex. Code Crim. Proc. Ann. arts. 36.07–.08 (West 2007); *Dang v. State*, 154

6

S.W.3d 616, 619–20 (Tex. Crim. App. 2005).[6] We review a trial court's limit on the length of closing jury argument for an abuse of discretion, remembering that any such limit must be reasonable. *Id.* However, such discretion is "broad." *Id.* at 619. In determining whether the trial court abused its discretion in limiting closing jury argument, we may consider several factors, including (1) the quantity of the evidence, (2) the duration of the trial, (3) conflicts in the testimony, (4) the seriousness of the offenses, (5) the complexity of the case, (6) whether counsel used the time allotted efficiently, and (7) whether counsel set out what issues were not discussed because of the time limitation. *Id.* at 621. The amount of time used by the State is not relevant to the abuse-of-discretion determination because the proper inquiry is whether defense counsel had adequate time given the nature of the case. 43 Dix, *supra* note 5, at § 45:5.

---

[6]We recognize that a complete denial of counsel's right to argue to the jury implicates a defendant's constitutional right to counsel. *See Herring v. New York*, 422 U.S. 853, 864–65, 95 S. Ct. 2550, 2556 (1975). But it is unclear whether a restriction on the length of such argument would implicate constitutional as well as statutory concerns. *Compare Dang*, 154 S.W.3d at 619–20 (analyzing reasonable time period as statutory entitlement) *with id.* at 623 (Meyers, J., concurring) (asserting limitations on argument may violate Sixth Amendment). Because we ultimately conclude that the trial court did not abuse its discretion, we need not decide whether Appellant's right to counsel was violated by the inadvertent error. *See* 43 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice & Procedure* § 45:5 (3d ed. 2011) ("The constitutional approach of the concurring judges [in *Dang*] would elevate the standard used to evaluate the question of whether an improper time restriction could be considered harmless.").

### III.  DISCUSSION

### A.  PRESERVATION OF ERROR

The State asserts that because lead counsel failed to object at the time the trial court told him he had two minutes left, he forfeited his argument.  Indeed, to preserve error, a defendant must timely object with the requisite specificity to avoid forfeiting the right to complain of the error.  *See* Tex. R. App. P. 33.1(a). The purpose of preservation of error is to "provide trial courts or opposing counsel with opportunities to prevent or cure errors so as to permit trial proceedings to continue to a final conclusion free from attack and reversal on appeal."  43A Dix, *supra*, at § 53:3 (citing *Rhett v. State*, 839 S.W.2d 93, 94 (Tex. Crim. App. 1992)).

The trial court stated that it discovered the time error after all arguments were concluded, but it is not clear when the trial court informed lead counsel of the problem.  But lead counsel testified at the new-trial hearing that he realized he had not received his full time to argue "when [he] sat down":

> When I sat down, I looked over at [co-counsel] and said, did I really talk for 18 minutes, and he shrugged his shoulders.
>
> And I vividly remember looking back at the clock, but I had made the mistake of not writing down start times on a legal pad, which I normally do.  So I looked back at the clock and saw what time it was, but I couldn't tell when I had started, so I couldn't do it. So I didn't realize it for sure until I sat down.

This case is analogous to cases where counsel specifically asks for more time and the trial court immediately denies the request.  *See, e.g., Johnson v.*

*State*, No. 01-08-00709-CR, 2011 WL 6014218, at *6–7 (Tex. App.—Houston [1st Dist.] Dec. 1, 2011, no pet.) (mem. op., not designated for publication); *Barajas v. State*, 732 S.W.2d 727, 729 (Tex. App.—Corpus Christi 1987, pet. ref'd). In those situations, counsel is immediately aware that a potential error occurred, and a prompt objection is necessary to give the trial court an opportunity to address it. *See* Tex. R. App. P. 33.1(a)(1)(A); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). Likewise, lead counsel was aware after he sat down (and presumably while the State was arguing in rebuttal) that he had not received his full allotment of time. An objection at this point would have allowed the trial court to remedy the inadvertent error at a time when it was in a position to do something about it. *See Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). By failing to timely object when he realized the error, any resulting harm has been forfeited. We overrule Appellant's sole point.

## B. ABUSE OF DISCRETION

To the extent it could be asserted that Appellant did not forfeit his argument, we address abuse of discretion. Appellant argues that the trial court abused its discretion and reversibly erred by giving "the State . . . its full allotment of time while the Defense was given only approximately twenty-two minutes for its entire closing argument." As we noted above, how much time the trial court gave to or how much was used by the State are not the relevant inquiries; we must determine whether the trial court's inadvertent twenty-two-minute limit was unreasonable and, thus, an abuse of discretion.

9

**1. Quantity of Evidence, Trial Duration, and Testimony Conflicts**

Over a period of less than two days, the State called six witnesses, including L.G., L.R., and S.A., and Appellant presented no witnesses. L.G. and L.R. testified in detail regarding Appellant's inappropriate behavior, including exposing himself to them. As indicated above, the bulk of Appellant's trial strategy was attacking L.G.'s and L.R.'s credibility by pointing out inaccuracies and contradictions in their reports of the details of the offenses. Specifically, L.R. admitted that she had previously reported fewer indecent instances than she later accused Appellant of committing. She also stated that she wanted her parents to get back together during that time and kept the inappropriate texts from Appellant as "evidence." L.G. similarly admitted that she failed to consistently report every instance Appellant was indecent in her presence. Regarding one instance, L.G. conceded that she had previously stated Appellant was wearing a towel, while she later averred Appellant was naked. S.A. testified that neither L.G. nor L.R. mentioned any inappropriate behavior by Appellant until June 2010, which was around the time S.A.'s marriage to Appellant began to deteriorate and after S.A. began purposefully separating her assets from Appellant's. Several pieces of evidence admitted at trial showed that Appellant had the desire and the opportunity to expose himself to the girls and that he admitted to being inappropriate with them several times.

## 2. Seriousness of Offenses and Complexity of Issues

Appellant was charged with six counts of indecency with a child by exposure, which subjected him to possible sentences of not more than ten years or less than two years. *See* Tex. Penal Code Ann. §§ 12.34, 21.11(a)(2), (d). However, Appellant was eligible for court-ordered community supervision, which he received. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(C). Although the trial court prepared two, separate charges—one for the allegations involving L.G. and one for the allegations involving L.R.—the court seemed only to read once any duplicative information, such as the required mens rea, offense elements, and admonitory instructions. The jury charges instructed the jury on each count of indecency and specified what facts they had to find beyond a reasonable doubt in order to convict Appellant. Although the underlying facts were different for each offense, the required legal elements and definitions were the same for each. However, lead counsel testified that he "did not plan to address the jury charge at all" in his closing argument.

## 3. Efficient Use of Time

Before closing argument, lead counsel and co-counsel had agreed that co-counsel would use approximately ten minutes of the thirty allowed and that co-counsel would focus on attacking S.A. and her role in the dysfunctional family dynamic. Lead counsel planned to argue for approximately twenty minutes and to attack the inconsistencies in L.G.'s and L.R.'s allegations. Lead counsel made an outline of his intended argument, which was admitted into evidence at the

new-trial hearing. Lead counsel admitted that he began his argument by briefly trying to do "an attack dog job" on S.A., which was not part of his outline. He explained that he did not believe co-counsel had adequately attacked S.A., which was necessary. Lead counsel then proceeded to argue why L.G. and L.R. would fabricate the allegations against Appellant: they wanted S.A. and Appellant to break up. Lead counsel did not begin to point out specific inconsistencies in L.G.'s and L.R.'s allegations until the trial court gave the mistaken two-minute warning. At that point, lead counsel had covered in detail five pages of his fifteen-page outline. But lead counsel elaborated that, considering the entirety of his argument, he was unable to cover only three pages of his outline based on the time limit. Therefore, lead counsel mentioned the information included on twelve pages of his fifteen-page outline in the approximately twelve minutes he was allowed to argue. This was an efficient use of counsel's time.

### 4. Issues Not Discussed

The record is detailed as to the factual conflicts that lead counsel could not address due to the time limit: (1) L.G. embellished what Appellant did when recounting the incidents later for police officers, (2) L.G. said she delayed telling S.A. about the incidents because she was mad at S.A., (3) L.R. vacillated on the date she told S.A. about Appellant, (4) L.R. never mentioned one incident even though L.G. said L.R. was there, (5) L.G. said Appellant forced her to take naked pictures of herself but no such pictures were ever found, and (6) L.R.'s report that Appellant masturbated while helping her with her homework did not "make any

12

sense whatsoever." It appears most of the legal theories lead counsel included in his outline were argued to the jury, although not in the detail he might have preferred.

### 5. Application

On the basis of this record, we cannot conclude that the trial court abused its discretion by inadvertently limiting Appellant to twenty-two minutes to argue to the jury. The offenses, while serious, were subject to a lesser degree of punishment than most felonies. The multiple counts, while fact intensive, essentially became credibility determinations for the jury and, thus, were not unduly complicated. The majority of counsel's desired closing arguments were, in fact, made. Further, the "considerable amount of time" the jury deliberated suggests that each allegation was carefully considered. Although Appellant was convicted of each count, his sentence was suspended. The twenty-two-minute limit was not unreasonable; thus, the trial court did not abuse its discretion.

### IV. CONCLUSION

Having overruled Appellant's sole point, we affirm the trial court's judgments.

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, MCCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 17, 2013.

13