DISSENT
MERRITT, Circuit Judge,
dissenting.
I disagree with my colleagues that “extraordinary circumstances” do not exist here where defense counsel in closing argument invited the jury to “put” his client “to death.” I do not believe that further development of the record is necessary, but, if so, the recent cases of Trevino v. Thaler, — U.S. -, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), and Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), should open the door to supplement the record.
At the end of the sentencing phase of this death penalty case, just before the jury retired to consider its verdict, defense counsel stated to the jury on behalf of Moore: “I know I wouldn’t want to go to jail for seventy-three years. I’d rather you put me to death.” Tr. Trans. 1221. This statement to the jury suggesting the execution of his client rather than imprisonment followed closely upon the testimony of the defense expert, a psychologist, Dr. David Chiappone. Defense counsel had just put the expert on the stand without knowing what his testimony would be. The expert testified that Moore told him that he killed the victim intentionally, testimony that directly contradicted the entire theory of Moore’s defense in the case that the shooting was accidental. During the course of the final argument in which defense counsel said, “I’d rather you put me to death,” defense counsel reinforced his request for death by telling the jury that a long sentence in jail was not fair to the victim’s family. Tr. Trans. 1214. In his rambling closing, counsel also said, “I mean if you shoot somebody in the head and you’re in a little area and his brains fly out all over the wall, that is going to have an effect.” Tr. Trans. 1205. By agreeing with the prosecutor about his client’s fate, defense counsel in effect abandoned his client in the sentencing phase of the case during final argument just before the jury began deliberation.
All of these facts were before the Supreme Court of Ohio on direct appeal in which the Supreme Court stated: “In his thirteenth proposition of law, Moore argues that counsel were ineffective at the penalty phase in failing to prepare adequately with witnesses, and that such failure resulted in a surprise revelation fatal to his case.” State v. Moore, 81 Ohio St.3d 22, 689 N.E.2d 1, 14 (1998). The Court’s answer to this ineffective assistance of counsel argument on direct appeal was that “Moore’s arguments under this proposition are purely speculative and do not compel a reversal of his death sentence.” Id. The argument was “speculative” apparently because the state court did not know what effect it had on the jury.
The basic issue of ineffective assistance of counsel was decided on direct appeal by the Ohio Supreme Court with the sentencing phase errors in the transcript before it. The Court decided the question on the merits. It did not invoke procedural default, and there is no reason to invoke AEDPA or its procedural doctrines to block a federal court from reaching the merits. Defense counsel’s invitation to the jury to impose the death penalty against *779 Moore should be regarded under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as a per se violation of the Sixth Amendment right to counsel, a violation in which prejudice is presumed. The Strickland case says:
In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel’s assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.
Id. at 692, 104 S.Ct. 2052 (citation omitted). When defense counsel effectively abandons his client during the mitigation phase of a death penalty case and calls on the jury to impose death rather than imprisonment, prejudice should be presumed.
This view is reinforced by Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). There, the Supreme Court recognized the singular significance of counsel’s closing argument in the adversary process. Closing argument is the moment that is supposed to tie all of the evidence together, illuminate the significance of the evidence to the fact-finder, and argue why the evidence supports his client’s position. For a defendant in a capital trial, it is “the last clear chance to persuade the trier of fact” that he should not be executed. Id. at 862, 95 S.Ct. 2550. “ ‘The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem.’ ” Id. at 860, 95 S.Ct. 2550 (quoting Yopps v. Maryland, 228 Md. 204, 178 A.2d 879, 881 (1962)). The Court in Herring explained the importance of what is said in final argument:
The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective.... [I]n a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.
Id. at 862, 95 S.Ct. 2550.
Moore received a grossly unfair trial twenty years ago in which his own lawyer abandoned him and called on the jury to impose the death penalty. The sentencing phase of the case should be retried with a defense lawyer who is competent and does not abandon his client. My colleagues have simply ignored and refused to recognize the extraordinary prejudice defense counsel visited upon his client.