Filed 11/13/13  P. v. Romero CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUVENAL CERVANTES ROMERO,<br><br>    Defendant and Appellant. | F064973<br><br>(Tulare Super. Ct. No. VCF262755)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett Alldredge, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Defendant was convicted for possessing marijuana in a custodial facility under Penal Code[1] section 4573.6. That statute prohibits knowing possession of certain controlled substances in state prisons, county jails, and other specified custodial facilities. (§ 4573.6, subd. (a).) The lower court made a pretrial ruling that the facility in which defendant possessed the marijuana qualified as a custodial one under section 4573.6. The court then prospectively prohibited defense counsel from arguing to the jury at trial that the facility was not a custodial facility under section 4573.6. Defendant contends this was error. We agree and reverse.

# FACTS

## PRETRIAL

### *Motion to Dismiss*

Defendant was charged with one count of possessing illegal substances in a jail facility. (§ 4573.6.) He moved to dismiss the information. (§ 995.) He argued, as relevant here, that there was insufficient evidence that the facility at which he possessed the alleged marijuana was "a place where 'prisoners or inmates are being held *under the custody of* any sheriff, chief of police, etc.,' within the meaning of Penal Code section 4573.6.…" The court denied the motion and said it believed the facility in question was encompassed by the statute.

### *Court's Pretrial Order Regarding Closing Argument*

Shortly before trial, the following exchange occurred between the court and defense counsel:

> "[DEFENSE COUNSEL:] I just want to clarify because of the court's ruling that this place is a custodial facility and am I precluded from arguing that it is not to the jury?
>
> "THE COURT: Yes.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise noted.

"[DEFENSE COUNSEL:]  Even though it is one of the elements.

"THE COURT:  As a matter of law you are precluded from doing that, yes. You can argue what you think your client thought, saw, whatever based upon the evidence that is elicited, but you can't argue, you can't argue that it is not a facility to have the jury supplant my legal ruling and say no, we don't think it is a qualified custodial facility.

"[DEFENSE COUNSEL:]  Okay.  I would just object.

"THE COURT:  Your objection is noted."

### *Defense Requests Instruction on Simple Possession*

Before trial, defense counsel requested a lesser included instruction for violation of Health and Safety Code section 11357, subdivision (b).  The court denied the request, holding that if the prosecution cannot prove the section 4573.6 offense, then the jury would not be able to convict on the lesser included offense.

## TRIAL EVIDENCE

### *SWAP/DRC Programs*

Santos Salgado is a deputy sheriff for Tulare County, assigned to the Sheriff Work Alternative Program (SWAP)/Daily Reporting Center (DRC) in Visalia.

Salgado was asked to describe the SWAP program.  He testified, "[a]s soon as people are sentenced in court several of them are allowed to enroll in a work program in lieu of physically being in jail, they are put to serve out their time through our work programs."  DRC is a "different type" of work program offered at the same facility.

Potential participants may inquire about the programs.  Different factors are evaluated, including length of sentence, crime committed, and criminal history to determine whether the work programs are appropriate.  This is referred to as the classification process.  The county then advises the applicant whether they qualify for SWAP and DRC.  If they qualify, the applicant determines which program they are interested in and an appointment is scheduled, if necessary.

3.

The sheriff's department considers participants in the SWAP and DRC programs to be booked inmates. The participants are supervised, and must wear brightly colored vests marked "SWAP DRC" at all times.

Both programs are housed in the same facility to which Deputy Salgado is assigned. That facility has two holding cells, which are not visible from outside the facility. On the same property, next to the SWAP/DRC office is a crime lab. The SWAP/DRC office also shares a cinderblock wall with a men's correctional facility. Deputies at the correctional facility perform perimeter checks of the entire complex, including the SWAP/DRC office.

Participants in the program are dispersed around the facility doing various jobs.[2] They are not confined to a single building, nor are they confined by any fencing. There is no physical boundary between participants and the public. The participants are supervised generally, but they are not monitored "every single moment" by the SWAP/DRC office. Participants in the DRC program even do work outside the SWAP/DRC facility. The inmates who remain in the facility for their work are prohibited from crossing a dirt road dividing the inmate parking lot from the SWAP/DRC building.

Participants are released at 3:00 p.m. Participants do not sleep at the SWAP/DRC facility, and there is no requirement they inform Deputy Salgado where they go after 3:00 p.m.

On cross-examination, defense counsel asked Deputy Salgado questions regarding buildings on the complex where the SWAP/DRC office is located. At one point, she asked whether some of the buildings on the premises were previously used as offices for the sheriff's department. The prosecutor objected on relevance grounds and the court sustained the objection. Defense counsel asked to be heard, and the court responded, "No, let's just move on." Later, defense counsel asked Deputy Salgado whether the DRC

---

[2] The trial transcript says participants are "disbursed" around the facility.

4.

office looked like a jail. The prosecutor again objected on relevance grounds, and the trial court sustained the objection.

### *Signage*

The public entrance to the property is on Road 112. As you turn into the parking lot there, there are two large signs on either side. One of the signs is approximately three feet high and four feet wide. The sign read, in part:

> "YOU ARE NOW ENTERING TULARE COUNTY CORRECTIONAL CENTER PROPERTY. ENTRY BEYOND THIS POINT WILL BE CONSIDERED AN IMPLIED CONSENT TO SEARCH OF YOUR PERSON OR VEHICLE.

> "Bringing or possessing on your person or in your vehicle, any narcotic substance, drug, marijuana, alcoholic beverage, firearms, deadly weapons, explosive devices or any other unauthorized object on Correctional Center property is a FELONY and will be Prosecuted.

> "Penal Code Sections 4573.5, 4573.6 & 4574"

### *Events of January 20, 2012*

On January 20, 2012, Deputy Salgado's duties included assisting with the classification process. He was the contact person if someone wanted to apply for the SWAP or DRC programs.

At about 3:00 p.m. that day, defendant came into the SWAP/DRC office. Defendant began the classification process with Deputy Salgado, showing him court documents that listed his crimes. Deputy Salgado believed defendant had either been an unlicensed driver or was found driving on a suspended licensed. Deputy Salgado asked defendant how he got to the office. Defendant replied either his sister or girlfriend was in the vehicle and had driven him.

Deputy Salgado preferred to conduct the classification process in private. He and defendant went to a hallway off of the public lobby. Deputy Salgado patted down defendant. As Deputy Salgado began the pat down, defendant reached for his right front pants pocket. Defendant told Deputy Salgado he had something in his pocket. Deputy

5.

Salgado told defendant to empty his pockets. Defendant pulled items out of his pockets and placed them on a counter. He then said he had nothing else. Deputy Salgado did another pat down to confirm. When Deputy Salgado was going to touch his right front pocket, defendant said "Oh man, I forgot I had marijuana there, I meant to leave it in my car." Deputy Salgado pulled a knotted piece of plastic out of defendant's pocket. The plastic contained a substance. Deputy Salgado described the substance as having "a similar odor, similar appearance to that of marijuana."

Defendant told Deputy Salgado he used marijuana on the way to the SWAP/DRC office. Deputy Salgado asked if he could search defendant's vehicle, and defendant consented. Another deputy, Deputy Nash, testified that Deputy Salgado asked defendant if there was anything in the car. Defendant said, "[T]here is weed in my car."

Using the keys defendant had emptied from his pockets, Deputy Salgado was able to enter the vehicle. Deputy Salgado located two partially-used joints in the ash tray of the vehicle. The joints smelled of marijuana.

Deputy Nash located a plastic baggie wedged between two seats. The baggie contained a green leafy substance that Deputy Salgado recognized as marijuana. Deputy Nash testified the two containers of alleged marijuana together weighed 6.7 grams. The results of a preliminary test of the substance were positive for marijuana.

Defendant testified. He said that he did not think to check his pockets before he went into the SWAP/DRC office. He did not know there was a bag of alleged marijuana in the vehicle he drove. When he told the deputy there was "weed" in the car, he was referring to the joint, not the baggie between the seats. He testified he did not know marijuana was a controlled substance but did know he was not supposed to have it.

**JURY INSTRUCTIONS**

The court instructed the jury with CALCRIM 2748 as cited, in pertinent part, below:

6.

"The defendant is charged with possessing marijuana, a controlled substance in a penal institution, violation of Penal Code Section 4573.6. To prove that the defendant is guilty of this crime the People must prove that 1, the defendant possessed a controlled substance in a penal institution or on the grounds of a penal institution. 2, the defendant knew of the substance[']s presence. 3, the defendant knew of the substance's nature or character as a controlled substance. 4, the controlled substance that the defendant possessed was marijuana. And 5, the controlled substance was in a usable amount.

"A penal institution is a county jail, county road camp, county farm or place where prisoners or inmates are being held under the custody of a sheriff.…" [3]

## VERDICT AND SENTENCE

The jury convicted defendant as charged. The court granted three years' probation, conditioned upon 120 days in jail. Defendant was credited for 133 days served awaiting sentence.

## DISCUSSION

## THE TRIAL COURT ERRED IN PROHIBITING DEFENSE COUNSEL FROM ARGUING A THEORY OF THE CASE

Defendant contends the trial court infringed his right to present closing argument to the jury through counsel. Respondent concedes error. We agree with the parties that the court erred.

"A criminal defendant has a well-established constitutional right to have counsel present closing argument to the trier of fact. [Citations.]" (*People v. Marshall* (1996) 13

---

[3] CALCRIM 2748 is less detailed than the statute regarding locations to which section 4573.6 applies. The statute lists: "any state prison, prison road camp, prison forestry camp, or other prison camp or prison farm or any place where prisoners of the state are located under the custody of prison officials, officers, or employees, or in any county, city and county, or city jail, road camp, farm, or any place or institution, where prisoners or inmates are being held under the custody of any sheriff, chief of police, peace officer, probation officer, or employees, or within the grounds belonging to any jail, road camp, farm, place or institution,…" (§ 4573.6.)

7.

Cal.4th 799, 854; accord, *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1184.)  In California, this right is also guaranteed by statute.  (*People v. Manning* (1981) 120 Cal.App.3d 421, 423-424; see also § 1095, subd. (e).)

The right protects not only the opportunity to argue, but to do so meaningfully. " ' "The right of discussing the merits of the cause both as to the law and facts, is unabridged.  The range of discussion is wide.  [Counsel] may be heard in argument upon every question of law….  His illustrations may be as various as the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wings to his imagination." ' "  (*People v. Manson* (1976) 61 Cal.App.3d 102, 199, fn. 98.)[4]

Closing argument clarifies the issues for the jury, and is the "last clear chance" for the defense to raise reasonable doubt in the jurors' minds.  (*Herring v. New York* (1975) 422 U.S. 853, 862 (*Herring*).)  Thus, it is "a basic element of the adversary factfinding process in a criminal trial.…"  (*Id.* at p. 858.) "[N]o aspect of such advocacy could be more important .…"  (*Id.* at p. 862.)

Here, the trial court precluded defense counsel from arguing the SWAP/DRC facility was not a custodial facility under section 4573.6.  Specifically, the court ordered: "[Y]ou can't argue that it is not a facility to have the jury supplant my legal ruling and say no, we don't think it is a qualified custodial facility."

But whether the SWAP/DRC facility was a custodial facility under section 4573.6 is a "*fact* necessary to constitute the crime" charged (*People v. Figueroa* (1986) 41

---

**4** Of course, despite the scope of this colorful and expansive language, courts may place reasonable restrictions on closing argument to avoid redundancy (*People v. Rodrigues*, *supra*, 8 Cal.4th 1060), undue consumption of time (*People v. Mendosa* (1918) 178 Cal. 509) or the conveyance information that would not have assisted the jury (*People v. Marshall*, *supra*, 13 Cal.4th 799).

Cal.3d 714, 725, original italics) and was for the jury to decide.[5]  The judge was empowered to make his pretrial ruling on the motion to dismiss.  But as to the verdict, it was the jury's province to apply the law to the facts, and to determine *every* element of the charged crime.  (See *United States v. Gaudin* (1995) 515 U.S. 506, 511-515, 522-523.)  And, it was defendant's prerogative to present closing argument through counsel to the jury on that issue.  (See *Conde v. Henry* (9th Cir. 1999) 198 F.3d 734, 739 [court may not preclude counsel "from arguing his theory of the defense in closing arguments"].)  Thus, the trial court erred in striving to prevent the jury from arriving at a conclusion contrary to its pretrial ruling.[6]

No matter how certain the trial court was in its determination regarding the SWAP/DRC facility, it could not completely prohibit counsel from arguing the issue to the jury.  "[C]ounsel for the defense has a right to make a closing summation to the jury, *no matter how strong the case for the prosecution may appear to the presiding judge*...."  (*Herring*, *supra*, 422 U.S. at p. 858, italics added, fn. omitted.)  " 'The Constitutional

---

[5] "The rule prohibiting verdicts directed against an accused emanates from the guarantee of due process and the right to a jury trial.  Due process 'protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged' [citation].  It requires the state to prove ' "*every ingredient* of an offense beyond a reasonable doubt ...." ' [Citation.]" (*People v. Figueroa*, *supra*, 41 Cal.3d at p. 725, first italics in original, second italics added.)

[6] We note that this is not a case where the argument defendant sought to make was unquestionably frivolous.  Whether the SWAP/DRC facility fit into the categories listed in section 4573.6 (see fn. 3) is at least arguable.  While the facility shared a wall with a men's correctional facility, it remained a question of fact as to whether the SWAP/DRC facility was "within the grounds belonging to [a] jail." (§ 4573.6.)  Moreover, there was a colorable argument that the SWAP/DRC program participants were not "under the custody of [a] … peace officer." (§ 4573.6.)  Even though we may not be persuaded by these arguments, it is not our role, nor the trial court's, to adjudicate whether an element of the offense has been established.  It is the jury's role to decide and to do so with the benefit of argument from both sides.  Thus, while the People argue the errors presented here were harmless, she appropriately recognizes that this appeal presents a "close" question.

right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, *however simple, clear, unimpeached, and conclusive the evidence may seem*, unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right.' [Citation.]" (*Id*. at p. 860, quoting *Yopps v. State* (1962) 228 Md. 204.)

The court erred in prohibiting counsel from arguing the defense theory of the case.

## THE ERROR IS PREJUDICIAL PER SE

The People argue the error was harmless.

Before we determine whether the error was harmless, we must first decide whether the error is even subject to harmless error review. Some errors adversely affecting closing argument are subject to harmless error review (*People v. Bonin* (1988) 46 Cal.3d 659, 691-695 (*Bonin*), overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800) and others are not (*In re William F.* (1974) 11 Cal.3d 249, 255-256 disapproved,[7] by *Bonin*, *supra*, 46 Cal.3d at p. 695, fn. 4). We conclude the error here was prejudicial per se.

Our Supreme Court has answered the question we face in two extreme contexts. When a trial court completely prohibits defense counsel from making any closing argument whatsoever, the error is prejudicial per se. (*In re William F.*, *supra*, 11 Cal.3d at pp. 255-256. See also *United States v. Davis* (5th Cir. 1993) 993 F.2d 62, 64.) Conversely, when a trial court erroneously impairs defense counsel's closing argument in a manner that violates a statutory right, but does not even rise to the level of

---

[7] *Bonin* disapproved *In re William F.*, *supra*, 11 Cal.3d 249, only to the extent it implied that error adversely affecting defense counsel's closing argument *necessarily* infringes on the right to counsel. (*Bonin*, *supra*, 46 Cal.3d at p. 695, fn. 4.) Some errors adversely affecting defense counsel's closing argument may not amount to infringement of the right to counsel. *Bonin* did not disapprove *In re William F.*'s holding that complete denial of the right to present a closing argument is prejudicial per se.

constitutional error, it is subject to harmless error review.  (See *Bonin*, *supra*, 46 Cal.3d at pp. 691-695.)  The present case falls between these two extremes.  However, we believe the prejudice per se rationale of *In re William F.*, not *Bonin*, applies to the type of error presented here.

In *In re William F.*, *supra*, 11 Cal.3d 249, minor William F. had been found to have obstructed peace officers in the discharge of their duties (§ 148).  (*In re William F.*, *supra*, 11 Cal.3d at p. 251.)  Counsel for minor William F. requested an opportunity to present closing argument.  (*Id.* at p. 253.)  The court denied the request.  (*Ibid*.)  The Supreme Court concluded this was an erroneous denial of the rights to assistance of counsel and due process.  (*Id.* at pp. 254-255.)  Important here, the high Court also determined the error was prejudicial per se, holding:  " 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.'  [Citation.]  [¶]  The rule presuming prejudice particularly requires application in the instant case; it would be futile for us to attempt to measure prejudice on the basis of an argument which [defense] counsel never had the opportunity to present."  (*In re William F.*, *supra*, 11 Cal.3d at p. 256, fn. omitted.)

Conversely, *Bonin* was a death penalty case.  (*Bonin*, *supra*, 46 Cal.3d at p. 668.)  Defendant had a statutory right to have two counsel "argue the case."  (§ 1095.)  Nonetheless, the trial court refused to allow one of defendant's counsel to present closing argument.  (*Bonin*, *supra*, 46 Cal.3d at p. 691.)  The Supreme Court found this to be error.  (*Id.* at pp. 693-694.)  But, the Court concluded the error was not a *denial* of the right to counsel because one of defendant's attorneys was able to present "a full and unrestricted" closing argument.  (*Id.* at p. 694.)  Nor was the error an *infringement* on the right to counsel because " 'the opportunity [of the defense] to participate fully and fairly in the adversary factfinding process' [citation]  [was] not significantly limited .…"  (*Id.* at

p. 695.)  The error was merely statutory in nature (§ 1095) and subject to harmless error review.  (*Ibid*.)

When read together, the holdings of *Bonin, supra*, 46 Cal.3d 659, and *In re William F*., *supra*, 11 Cal.3d 249 suggest that the applicability of harmless error review hinges on the nature of the error as constitutional or merely statutory.  However, dicta in *In re William F.* clarifies that even some constitutional errors restricting closing argument are subject to harmless error review.  Thus, the true test is whether the impairment rises to the level of *denying* the constitutional right to counsel.  (See *In re William F.*, *supra*, 11 Cal.3d at p. 256, fn. 6.)  If the error merely *infringes* the right to counsel, or does not implicate the constitutional right to counsel at all, it is subject to harmless error review.  (*Ibid.* [mere infringement]; *Bonin*, *supra*, 46 Cal.3d at p. 695 [error implicating statutory, not constitutional rights].)  If the error effects a *denial* of the constitutional right to counsel, it is prejudicial per se.  (*In re William F.*, *supra*, at p. 256, fn. 6.)

We hold the error presented here is prejudicial per se for two primary reasons.  First, as in *In re William F.*, it would be "futile for us to attempt to measure prejudice" where the trial court *completely*[8] prohibits defense counsel attacking the government's case with respect to an element of the crime.  (Cf. *In re William F.*, *supra*, 11 Cal.3d at p. 256.)  Second, the error was a denial of the right to counsel, not merely an infringement of that right.  (See id. at p. 256, fn. 6.)

---

**8** We do not address the situation where a court permits defense counsel some argument on each defense theory, but imposes limitations to avoid redundancy (*People v. Rodrigues*, *supra*, 8 Cal.4th 1060), undue consumption of time (*People v. Mendosa*, *supra*, 178 Cal. 509) or the conveyance of information that would not have assisted the jury (*People v. Marshall*, *supra*, 13 Cal.4th 799).  In such cases, there is likely no error at all.

12.

*The Futility Rationale of In re William F. Applies to the Present Case*

The *reasoning* underlying the pertinent holding of *In re William F.* applies with equal force to the present case.[9] *In re William F.* held "it would be futile for us to attempt to measure prejudice on the basis of an argument which [defense] counsel never had the opportunity to present." (*In re William F.*, *supra*, 11 Cal.3d at p. 256, fn. omitted.)  It would be equally futile to attempt to determine what effect the presentation of an entirely omitted line of argument would have had on the jury.  " 'It is very difficult for a judge to determine what effect a given *line of argument* may have upon a jury,…' " (*People v. Green* (1893) 99 Cal. 564, 569.)  In sum, there is no way to know whether "appropriate arguments in summation might have affected the ultimate judgment in this case.…" (*Herring*, *supra*, 422 U.S. at p. 864.)  Therefore, we hold it would be "futile for us to attempt to measure prejudice" where the trial court *completely*[10] prohibits defense counsel from arguing the state failed to prove an element of the crime, and that such error is prejudicial per se.  (Cf. *In re William F.*, *supra*, 11 Cal.3d at p. 256.)

*Defendant's Right to Counsel Was Denied, not Merely Infringed*

Moreover, the error here constituted a denial of defendant's right to counsel and is therefore prejudicial per se under *In re William F.*  (*In re William F.*, *supra*, 11 Cal.3d at p. 256, fn. 6.)  In determining whether the court's error was a denial or an infringement,

---

[9] Unlike the reasoning of *Bonin*, which does not apply here.  In that case, one of defendant's counsel was permitted to present "a full and unrestricted argument on behalf of defendant." (*Bonin*, *supra*, 46 Cal.3d at p. 694.)  Thus, "the defense's opportunity to participate was not significantly limited .…" (*Id.* at p. 695.)  Here, the trial court did not permit full and unrestricted argument, and instead significantly limited the defense's opportunity to participate fully in the adversary process.

[10] We do not address a situation where the court has permitted defense counsel to argue any theory of the case, but has erroneously limited closing argument in some other fashion.  For example, an *un*reasonable time restriction on closing argument in a complex case may amount to an infringement of the right to counsel rather than a denial.  Such an error might properly be subjected to harmless error review.

we begin from an undisputed premise. Denying defense counsel the opportunity to present any closing argument whatsoever is a denial of the right to counsel. (*Herring*, *supra*, 422 U.S. 853; *In re William F.*, *supra*, 11 Cal.3d at p. 255.) On the issue of denial versus infringement, we see no meaningful distinction between prohibiting argument altogether, and prohibiting discussion of an entire element of the crime. The value of closing argument is not the opportunity to say any words to the jury whatsoever, but to present the defense's theory and point out weaknesses in the prosecution's case. (*Herring*, *supra*, 422 U.S. at p. 862.) We believe prohibiting argument altogether is constitutionally indistinguishable from prohibiting defense counsel from presenting argument on an entire element of the crime. The reason closing argument is worthy of constitutional protection is its station as the "last clear chance" for counsel "to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." (*Ibid.*) Counsel raises reasonable doubt by arguing one or more elements of the crime has not been sufficiently proven. Denying the opportunity to argue at all, and denying the opportunity to attack the prosecution's case in a meaningful way both fundamentally frustrate the purpose of closing argument and the right to counsel.

Thus, where counsel is completely prohibited from even attempting to persuade the jury with respect to an element of the crime, the defendant is denied his effective assistance.

Quite simply, "denying an accused the right to make final arguments *on his theory* of the defense *denies* him the right to assistance of counsel,…" (*Conde v. Henry*, *supra*, 198 F.3d at p. 739, italics added.) As a denial of the right to counsel, rather than mere infringement, the error is prejudicial per se. (See *In re William F.*, *supra*, 11 Cal.3d at p. 256, fn. 6.)

Because we reverse, we need not address defendant's remaining contentions. (Cf. *People v. Roberts* (1992) 2 Cal.4th 271, 322, fn. 12.)

**DISPOSITION**

The judgment is reversed.  The matter is remanded for possible retrial and further proceedings consistent with the views expressed herein.

 

                                       _____

                                       Poochigian, J.

WE CONCUR:

 

_____

Gomes, Acting P.J.

 

_____

Detjen, J.