J-S39017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| BRIAN ROLES | |
| Appellant | No. 1338 WDA 2016 |

Appeal from the PCRA Order August 3, 2016
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001464-2012

BEFORE:  BENDER, P.J.E., BOWES AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 26, 2017**

Brian Roles appeals from the August 3, 2016 order denying him PCRA relief.  We affirm.

Appellant was found guilty by a jury of homicide by vehicle while driving under the influence ("DUI") of alcohol or controlled substances, homicide by vehicle, aggravated assault by vehicle while DUI, involuntary manslaughter, two counts of recklessly endangering another person, DUI—second offense general impairment, DUI—second offense highest rate, and DUI—second offense drug and alcohol combination.  These convictions arose from a single-vehicle accident that occurred at approximately 10:45 p.m. on April 8, 2012.  Appellant was driving a truck that veered off the road in the 600 block of William Penn Avenue, East Taylor Township. The truck traveled

---

*  Retired Senior Judge assigned to the Superior Court.

up an embankment, crashed into a pole, and came to rest on the driver's side. Appellant's son, Brian Jr., sitting in the front passenger's seat, was ejected from the truck during the incident, and was pronounced dead at the scene. Appellant's nephew, K.R., was in the rear passenger seat.

Police Officer Shaun Gregory, who worked both for the East Taylor Township Police Department and the Jackson Township Police Department, responded to the police call about the accident. After Officer Gregory arrived on the scene at approximately 11:00 p.m., he spoke with Appellant. Appellant "said he was driving northbound on William Penn Avenue," when another vehicle traveling southbound "came in his lane of travel, causing him to swerve off the side of the road, up the embankment and strike the telephone pole." N.T. Trial, 8/27/13, at 14. Appellant had bloodshot and glassy eyes and the odor of alcohol was emanating from him; he was also visibly upset about the death of his son.

Officer Gregory described the scene as very chaotic since members of the Roles family were present and were reacting to the death of Brian Jr. As Officer Gregory suspected Appellant was DUI, he placed him in a police car, and East Taylor Township Police officer Joseph Marsh transported him to Conemaugh Hospital, which was a five-minute drive, for a blood test.

While K.R. was receiving treatment in an ambulance, Officer Gregory asked him what had occurred. K.R. reported that an oncoming vehicle had forced them from the road and that Brian was driving. K.R. did not state

whether Appellant, who was known as big Brian, or Brian Jr., who was called little Brian, was the driver.

Dr. Matthew Perry treated Appellant in the emergency room and reported that Appellant had minor abrasions to his lower extremities. Appellant was cooperative but "smelled of alcohol." N.T. Trial, 8/28/13, at 122. Dr. Perry testified that he asked Appellant a standard question, which was "his position in the car, and [Appellant] told me he was the driver." *Id*. at 123. Blood alcohol testing revealed that Appellant had a blood alcohol content of .17%. In addition, Appellant's blood tested positively for the presence of Oxycontin and Xanax.

Dr. Eric Roslonski, a pain management physician, also testified on behalf of the Commonwealth. Appellant was one of his patients when the accident occurred. At an April 27, 2012 appointment with Dr. Roslonski, Appellant discussed follow-up on a prior pain management plan. Appellant told Dr. Roslonski about the April 8, 2012 traffic accident and stated that "he was driving his truck with his 16 year old son and teenage nephew and he was run off the road[.]" N.T. Trial, 8/29/13, at 211.

The Commonwealth also presented the testimony of Greg Sullenberger, an accident reconstructionist and expert in occupant kinematics. Mr. Sullenberger testified that the victim's injuries were consistent with having been expelled from the passenger side of the vehicle.

Appellant testified at trial on his own behalf. He denied driving the truck, stating that he had a seizure minutes before the truck crashed and awoke to find his son driving and an oncoming car headed in their direction. On August 29, 2013, K.R. testified on behalf of Appellant as follows. He stated that Appellant was driving, they stopped at a local shop for sandwiches and beer, and Appellant fell over when they were walking back to the truck. Brian Jr. told K.R. that Appellant often had seizures so he and Brian Jr. placed Appellant into the truck. At that point, Brian Jr. took over driving responsibilities and was driving when a car entered their lane of travel and forced them from the road. In his defense, Appellant also presented expert testimony from Thomas Laino, who opined that Appellant's son had been driving.

The next day, August 30, 2013, K.R. voluntarily came forward to the district attorney, Eric Hochfeld, Esquire, and said that the testimony he had given at trial on August 29, 2013, was false and that he wanted to recant it. K.R. agreed, in exchange for not being charged with perjury, to return to the stand and testify on behalf of the Commonwealth as a rebuttal witness.

Before K.R. testified, the jury was told that "the defendant is entitled to an instruction to you that, if K.R. testifies today in a fashion that's contrary to what he testified to yesterday, the district attorney may well be able to charge him with perjury." N.T. Trial, 8/30/13 at 158. The trial court also informed the jury that the district attorney had offered "not to

prosecute [K.R.] if his testimony is in divergence with what he testified to yesterday." *Id*.

K.R. explained to the jury that, after his August 29, 2013 testimony, he could not eat or sleep as he "felt guilty . . . [b]ecause my cousin is not getting the justice he deserves." *Id*. at 159-60. The morning of August 30, 2013, K.R. went to school and spoke to school personnel about the situation, and they contacted Cambria County Children and Youth Services ("CYS"), which sent a representative to help K.R. After consulting with the CYS employee and speaking with his own lawyer, K.R. decided to change his testimony from the previous day.

On August 30, 2013, K.R. testified as follows. Appellant, Brian Jr., and he had stopped at a local shop and ordered sandwiches, but, afterward, Appellant had not fallen to the ground. Rather, they had all merely entered the truck together and departed. Appellant was driving, Brian Jr. was in the front passenger seat, and K.R. occupied the rear passenger seat. K.R. also denied that an oncoming car had caused the accident. Instead, "big Brian, he either fell asleep or nodded away or something. And he started to drift to the right, and Brian Jr., little Brian, grabbed the wheel, and the truck just wrecked. It just flipped." *Id*. at 164. K.R. repeated that Appellant was driving, Appellant started to nod, and the truck began to veer to the right. K.R. insisted that there was no oncoming car in their lane of travel.

K.R. also testified that, immediately after Appellant was charged herein, Appellant began to have frequent conversations with K.R. about his testimony and about what to say at trial. Appellant directed K.R. to testify that Brian Jr. was driving and that an oncoming car forced them from the roadway. *Id*. at 167-168. K.R. was then questioned about a written statement that he had given to police:

> Q. There was a written statement that was admitted as a defense exhibit, and you recall giving that statement to the police.
>
> A. Yes.
>
> Q. And your father was present at the time.
>
> A. Yes.
>
> Q. And you stated yesterday that was -- that was the truth, that that's what had happened, what was in that statement?
>
> A. Yes.
>
> Q. Would you agree then that statement isn't correct based on what you're saying today?
>
> A. Yes.
>
> Q. And was that statement the product of your uncle telling you what to say?
>
> A. Yes.

*Id*. at 169. K.R. was not cross-examined; Appellant's two trial lawyers simply established that they were not involved, prior to trial, in crafting K.R.'s August 29th testimony. After he gave his trial testimony, K.R.

reported to the trial judge that he was not comfortable returning home, declined the opportunity to be remanded to the custody of CYS, and was allowed to stay at his girlfriend's home.

Appellant was convicted of the above-delineated charges, and, on September 25, 2015, sentenced to eight and one-half to seventeen years incarceration. The court, which had the benefit of a pre-sentence report, indicated that Appellant had juvenile adjudications as well as thirty prior adult convictions, and some parole violations. On appeal, we affirmed. *Commonwealth v. Roles*, 116 A.3d 122 (Pa.Super. 2015), *appeal denied*, 128 A.3d 220 (Pa. 2015).

Appellant filed a timely *pro se* PCRA petition, counsel was appointed, and counsel filed two amended PCRA petitions. PCRA relief was denied following a hearing. In this appeal, Appellant raises these averments:

1. Was trial counsel ineffective in failing to deliver a closing statement to the jury, despite Appellant's efforts to have them do so?

2. Was trial counsel ineffective in failing to cross-examine the only eyewitness to the alleged crime offered by the Commonwealth, despite his obvious inconsistent testimony at trial?

3. Was trial counsel ineffective in opting to proceed to trial when it knew that potentially exculpatory evidence in the Commonwealth's possession had not been analyzed as ordered by the Court?

4. Was trial counsel ineffective in failing to impeach one of the investigating officers during his testimony by using his prior statements?

5. Was trial counsel ineffective in failing to pursue text messages sent by the victim on the night of the incident in question that may have been exculpatory in nature towards the Appellant?

6. Was trial counsel ineffective when he incorrectly stated at sentencing that the Appellant's convictions carried a 5-year mandatory sentence when they, in fact, only carried a 3-year mandatory sentence?

7. Was trial counsel ineffective in failing to object to the lack of merger, for sentencing purposes, of Appellant's convictions for Homicide by Vehicle and Homicide by Vehicle by DUI?

Appellant's brief at 4.

Initially, we note that appellate review of a PCRA order "is limited to a determination of whether the record supports the PCRA court's factual findings and whether its legal conclusions are free from error. A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. We review the PCRA court's legal conclusions *de novo*." **Commonwealth v. Williams**, 141 A.3d 440, 452 (Pa. 2016) (citations omitted).

Appellant's complaints relate to whether his trial counsel, Nicholas Banda, Esquire, and Ryan D. Gleason, Esquire, were ineffective. To succeed on an ineffective assistance of counsel claim, a defendant must "rebut the presumption that counsel rendered effective assistance and prove, by a preponderance of the evidence, that (1) the claim has arguable merit, (2) counsel's action or inaction was not based upon a reasonable trial strategy,

and (3) petitioner suffered prejudice because of counsel's act or omission." *Id*. at 454. With respect to the second prong, we "will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that the alternative strategy not selected offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Busanet**, 54 A.3d 35, 46 (Pa. 2012). To succeed in establishing the "prejudice prong, the petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Id*.

Appellant's first averment is that Mr. Banda, who was scheduled to conduct summation, was ineffective for failing to present closing argument after K.R.'s stunning admission that Appellant had suborned K.R.'s perjury and committed perjury himself. This rebuttal testimony was presented just before counsel was to offer closing remarks to the jury. After K.R. presented this rebuttal testimony, Mr. Banda simply stated that he would not be giving closing remarks due to the circumstances that had just occurred.

On appeal, Appellant relies upon **Commonwealth v. Sparks**, 539 A.2d 887 (Pa.Super. 1988), wherein we opined that trial counsel was ineffective for not giving closing remarks to the jury. That case involved a robbery and rape, where, at his jury trial, the defendant offered an alibi defense. The record indicated that both the defense and the Commonwealth

evidence, including the victim's identification testimony, was "ambiguous and conflicting." *Id*. at 888.

After the defense rested, the defendant's lawyer stated that he would not offer closing remarks since the testimony was "already riddled with confusion, reasonable doubt and contradictions." *Id*. at 889. The prosecutor proceeded to present a "summation spanning thirty-nine pages of trial transcript, in which, *inter alia*, he offered explanations for the inconsistencies in the Commonwealth's evidence and characterized the [complex] medical evidence as 'unrefuted.'" *Id*. At the hearing on the defendant's petition for post-conviction relief, trial counsel explained that he declined summation since he believed that he "had the case won," and "that his disdain for the Commonwealth's evidence would have an impact on the jury by suggesting, at least by implication, that he 'did not want to dignify the Commonwealth's case with a response.'" *Id*.

The **Sparks** Court noted that "the constitutional right to representation by counsel in a criminal proceeding includes the right to make a closing argument," but acknowledged that "the right may be waived as a matter of trial strategy." *Id*. at 889. It observed that the cases where trial counsel was determined to have acted reasonably in foregoing summation had involved "non-jury trials of short duration in which the evidence had been straightforward and uncomplicated." *Id*. The **Sparks** Court rejected trial counsel's proffered strategy as reasonable because the trial was before a

jury, the evidence was inconsistent on both sides, there were complex medical issues involved, and the Commonwealth had explained the inconsistencies in its case and characterized the medical evidence as solid while the defendant's trial counsel abandoned the opportunity to rebut these positions.

This Court in *Sparks* relied upon the United States Supreme Court's view on the importance of closing argument as elucidated in *Herring v. New York*, 422 U.S. 853 (1975), wherein the Court ruled unconstitutional a state statute that allowed judges presiding over nonjury trials to deny counsel the opportunity to make closing remarks. The *Herring* Court observed:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

*Id*. at 862.

In his argument on appeal, Appellant analogizes the evidence presented at his trial to that at issue in the *Sparks* case, and he relies upon *Herring's* opinion as to the importance of summation. Appellant, however, overlooks the spectacular ending of his own jury trial. K.R. was the only

eyewitness to the events in question. After the close of the defendant's case, K.R. came forward, despite trepidation about the consequences that he would suffer, and outlined to the jury that Appellant perjured himself and that Appellant had actively solicited and suborned perjury from K.R. This testimony was presented immediately before trial counsel had to make his summation to the jury.

As Mr. Banda explained at the PCRA hearing, he did not want to call his own star witness a liar. The PCRA court herein concluded that this explanation was reasonable, that **Sparks** was distinguishable, and that Appellant was not prejudiced by the absence of a summation. Trial Court Opinion, 8/3/16 at 7 (based on its instructions to the jury, "we cannot find that the lack of a closing argument prejudiced the Defendant"). The record does not support a finding that the PCRA court abused its discretion in this respect.

We concur with the PCRA court that, based upon the instructions that were disseminated to the jury, Appellant did not meet his burden of proving the prejudice aspect of the ineffective-assistance-of-counsel test, *i.e.*, that there is a reasonable probability that the outcome of the trial proceedings would have been different had Mr. Banda offered closing remarks. We first observe that Appellant makes no suggestion as to what summation could have been offered, merely suggesting that there were unspecified weaknesses in the Commonwealth's case that Mr. Banda could have pointed

out to the jury. Appellant's brief at 14. However, when Mr. Banda was asked to close, his star witness had just recanted, said he was pressured by Appellant to perjure himself, and accused Appellant of perjury. At most, Mr. Banda could have said that K.R. was perjuring himself on August 30, 2013, rather than on August 29, 2013, and that Appellant's August 29, 2013 testimony was truthful, even though, prior to being charged, Appellant told a police officer and two doctors that he was driving when the accident occurred.

Second, we conclude that the trial court's instructions dispelled any prejudice flowing from Mr. Banda's failure to offer what could have been, at best, a meager closing. The court told that jury that, during deliberations, "you may find inconsistencies in the evidence that was presented. **Even actual contradictions of witnesses don't necessarily mean that anyone was testifying in a willfully false manner**." N.T. Trial, 8/30/13, at 188 (emphasis added). It noted that poor memory was not uncommon and could cause a witness to remember events incorrectly. The trial court continued, "[I]t's also true that two people witnessing the same incident may see or hear it differently." *Id*. at 188-89.

After informing the jury that it was tasked with attempting to reconcile conflicting statements, the court said that, if the jury decided that "there is a real, a genuine and an irreconcilable conflict of testimony, it's your function to determine which, if any, of the conflicting and contradictory statements

you will believe." ***Id***. at 189. After outlining the factors that a jury should consider in assessing credibility, the court observed that "the defendant took the stand as a witness in this case." ***Id***. at 190. It continued: "In considering the defendant's testimony, you're to follow the general instructions I just gave you as to judging the credibility of the witness. But I have to caution you, **you should not disbelieve the defendant's testimony merely because he's the defendant**." ***Id***. at 190-91 (emphasis added). The court then admonished the jury that, if it concluded that "any witness testified falsely about a material point, . . . you may for that reason alone choose to disbelieve the rest of his testimony, **but you're not required to do so**," and it indicated that other parts of that witness's testimony could be credited. ***Id***. at 191 (emphasis added).

The trial court specifically examined the testimony offered by K.R. It noted that K.R.'s testimony given that day differed from the testimony "he gave yesterday under oath," thereby subjecting him to potential prosecution for perjury. ***Id***. at 192. It outlined the elements of perjury and noted that the district attorney had agreed not to prosecute K.R. for that crime. The trial court then stated to the jury: "**You should, however examine closely and carefully and receive with caution the testimony of any witness who you find either presently or previously committed perjury**." ***Id***. at 192 (emphasis added). The court then proceeded to

instruct the jury on how to assess the credibility of the expert witnesses offered at trial and to resolve the conflicts in their testimony.

The trial court indicated that a lawyer's argument was not to be considered as evidence, gave an extensive definition of reasonable doubt and the burden of proof, and outlined the elements of the crimes. It next observed that it was "entirely possible for a single witness to give truthful and accurate testimony and that his or her testimony may be believed even though a greater number of witnesses of apparently equal reliability contradicted him or her." *Id*. at 212.

These statements were disseminated by the trial court itself rather than constituting argument made by a lawyer who was representing Appellant. In light of the trial court's pointed instructions, we conclude that Appellant failed to establish a reasonable probability that his counsel could have offered a summation that would have resulted in an acquittal, especially since Appellant neglects to outline any specific argument that would have refuted the overwhelming evidence of his guilt.

Appellant's second position is that his trial counsel were ineffective for not cross-examining K.R. with his statements that were inconsistent with his August 30, 2013 rebuttal testimony.[1] In this respect, we note the following.

_____

[1] The Commonwealth maintains that this position is waived as it was not included in his *pro se* or counseled PCRA petitions. Commonwealth's brief at
*(Footnote Continued Next Page)*

The jury was fully aware that K.R. had testified on August 29, 2013, in direct contradiction to his testimony on August 30, 2013. Likewise, the record establishes that the jury knew about K.R.'s two statements to police, including the written one, where he specifically identified Brian Jr. as the driver. The Commonwealth actually examined K.R.'s prior inconsistent written statement during its direct examination of that rebuttal witness. Appellant could not have been prejudiced by counsel's failure to adduce evidence patently obvious due to the state of events or already revealed by the Commonwealth.

Appellant's third contention is that trial counsel was ineffective for not obtaining DNA testing of what could have been a blood stain found on the driver's side of the truck after the crash. Events pertinent to this issue occurred on August 22, 2013, immediately after denial of Appellant's motion to dismiss his case under Pa.R.Crim.P. 600. A question arose as to whether Appellant desired further testing of a stain found on the driver's side of the

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

12. **See** Pa.R.Crim.P. 902(B) ("[f]ailure to state such a ground [for relief] in the [PCRA] petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief"). However, trial counsel was questioned, without Commonwealth objection, as to why he did not cross-examine K.R., N.T. PCRA hearing, 6/27/16, at 16-20, and the PCRA court addressed this position. Trial Court Opinion, 8/3/16, at 9. Hence, we prefer to address the allegation on the merits. **See Commonwealth. v. Elliott**, 80 A.3d 415, 430 (Pa. 2013) (noting that issue was waived because it was not contained in appellant's PCRA petitions, but proceeding to address position on the merits).

- 16 -

truck. A previously-scheduled trial was continued in order to have that stain tested. N.T. Rule 600 Hearing, 8/22/13, at 10. A swab of the stain was sent to a state laboratory, but the returned report was ambiguous as to whether the stain was blood. It stated in one section that the "there was no blood on the swab," but, in another paragraph, the report said, "there was blood." N.T. Rule 600 Hearing, 8/22/13, at 9.

The trial court ascertained that the Commonwealth was ready to proceed immediately with trial, and it asked Mr. Banda if the report affected his desire to go forward. At that point, Mr. Banda said, "I would like to go to trial even if there is not a final determination of that spot as being blood or not." *Id*. The court responded: "[L]et's be forthright here. Is there something you think that should be, there should be a further analysis or not? If there is, what are we going to do? If there isn't, we're going to go forward with the trial." *Id.* When counsel refused to either admit or deny that further testing was needed, the trial court said that, if counsel believed further testing was not in order, the trial would proceed. *Id*. at 11. The parties immediately started to select a jury.

At the PCRA hearing, Mr. Banda explained that he did not obtain additional testing since he was unsure as to whether it would exonerate Appellant and since Appellant did not want to delay the trial further. N.T. PCRA Hearing, 6/27/16, at 15. The PCRA court herein credited trial counsel's explanation for not asking to continue trial to obtain further testing

of the stain. As the record supports the trial court's credibility determination and counsel articulated a reasonable strategy for not getting more testing on the stain, we reject Appellant's stance that Mr. Banda was ineffective in this respect.

Appellant's fourth position is that trial counsel was ineffective for not impeaching Officer Shaun Gregory. We reject this position for the following reasons outlined by the PCRA court:

> Petitioner argues that at his suppression hearing, Officer Shaun Gregory of the East Conemaugh Police Department testified that the Petitioner gave him a physical copy of his driver's license, while at trial he told the jury that Petitioner verbally gave him identifying details such as his name and Social Security number. Petitioner argues that this inconsistency should have been used to impeach the officer. The following exchange between Assistant District Attorney Eric Hochfield and Officer Gregory occurred at the suppression hearing:
>
> > Q. Do you recall if he ever provided you with any identification or insurance at that time?
> >
> > A: He provided me with identification. I did get an operator number from him.
> >
> > Q: Would that have been at the onset of the conversation you had with him?
> >
> > A: That would have been after, yeah, after I clarified who was the driver.
>
> Transcript of Suppression Hearing, 7/29/16, p. 12, II. 18-25.
>
> Later on cross examination, the officer was questioned by Attorney Banda as to whether the Petitioner pulled his license from his wallet and officer responded that he could not recall. At trial, the officer testified merely that the Petitioner was

"identified" and that he gave his name and date of birth.   T.T 8/27/13, pp. 13-14.

While we note the slight difference in testimony we are not convinced that the inclusion of this minor consistency would have had any impact on the outcome of the trial.   As previously noted, the case hinged on the testimony of [K.R.]   For these reasons we find that the Petitioner has failed to meet the above-standard for post-conviction relief.

Trial Court Opinion, 8/3/16, at 11.

Appellant's fifth averment on appeal is that trial counsel was ineffective for failing to investigate text messages that his son sent to his girlfriend on the night of the accident.   Appellant claimed at the PCRA hearing that the text messages contained "helpful evidence."   N.T. PCRA Hearing, 6/27/16, at 27.   Both Mr. Banda and Mr. Gleason testified that they had no recollection of discussing text messages with Appellant.   *Id.* at 7, 15. We conclude that this claim is completely unsupported.   Appellant did not present any testimony from Brian Jr.'s girlfriend about text messages sent by Brian Jr., he did not obtain Brian Jr.'s cellular telephone, which had been secured by police, and he did not obtain records from the cell phone service provider verifying the existence of text messages.   It is established that a PCRA petitioner, to obtain relief, must both plead and **prove** that counsel was ineffective.   **Williams**, **supra**; 42 Pa.C.S. § 9543(a).   We concur with the PCRA court that Appellant cannot prevail on this position due to the absence of any proof that these text messages existed.

Appellant's sixth allegation of error pertains to the fact that, at sentencing, Mr. Gleason incorrectly indicated that the mandatory minimum sentence for homicide by vehicle while DUI is five years when the mandatory minimum is actually three years. *See* 75 Pa.C.S. § 3735 (a) (the sentencing court shall order a person convicted of homicide by vehicle while DUI "to serve a minimum term of imprisonment of not less than three years").

Herein, Mr. Gleason did misstate that this crime carried a mandatory minimum of five years, which he admitted at the PCRA hearing. However, as Appellant acknowledges, the sentencing court did not impose any mandatory minimum sentences. Rather, it imposed standard range sentences pursuant to the sentencing guidelines. N.T. Sentencing, 9/25/13, at 12 ("And those [sentences] are all standard range sentences, there are no aggravated range sentences, but they're the top end of the standard range.").

Appellant posits that, absent the misstated mandatory minimum, the court might have sentenced him in the mitigated range. Appellant's brief at 19-20. The PCRA court, which also sentenced Appellant, discounted this position, stating that "nothing that Attorney Gleason said at sentencing influenced the length of the Court's term of incarceration." Trial Court Opinion, 8/3/16, at 10. Hence, Appellant did not establish that the outcome of the sentencing hearing was impacted by Mr. Gleason's error and this claim of ineffective assistance of counsel fails.

Appellant's final position is that trial counsel was ineffective for neglecting to object to the trial court's refusal to merge, for sentencing purposes, his convictions for homicide by vehicle and homicide by vehicle while DUI. Appellant concedes that, in **Commonwealth v. Collins**, 764 A.2d 1056 (Pa. 2001), our Supreme Court held that the offenses of homicide by vehicle and homicide by vehicle while DUI do not merge for sentencing purposes. He presents the issue to this Court "to potentially preserve the issue for appeal to Pennsylvania Supreme Court for reconsideration[.]" Appellant's brief at 20. Hence, we do not consider this claim further.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2017